Smith *v.* Grant.

———————◆———————

JAMES H. SMITH *versus* ISRAEL R. GRANT *& al.*

The writ of replevin was never intended as a means for the summary removal from a dwellinghouse of a tenant at will, who has a possession thereof, which he has a right to retain until removed by due process of law for such cases made and provided.

Thus, where the owner of a messuage notified his tenant at will to quit, and, subsequently, on the trial of a complaint for forcible entry and detainer, judgment was rendered for the tenant; and, two days thereafterwards, the owner executed a bill of sale of the dwellinghouse, together with the right of occupying the same, including the underpinning where it stood, or of removing it before a day named; and the tenant, on the same day, refused to quit on written notice to do so, and of the purchase by the vendee; and thereupon the vendee replevied the house, and the officer, in serving the writ of replevin, by direction and with the aid of the vendee, ejected the tenant and his family, removed his furniture, and put the vendee in possession; and thereupon the tenant sued the officer and the vendee in trespass *quare clausum ;* — *Held,*

That the replevin writ afforded no protection to the officer under the circumstances.

In the trial of an action of trespass· *quare clausum*, brought by a tenant at will against an officer for illegally ejecting the plaintiff and his wife, and removing their furniture from the dwellinghouse occupied under the tenancy, — an instruction authorizing the jury, in their assessment of the damages, to find " a reasonable compensation to the plaintiff and wife for the injury done to their feelings in being removed, is erroneous.

ON EXCEPTIONS.

TRESPASS QUARE CLAUSUM, for breaking and entering a dwellinghouse on Nov. 13, 1866, then occupied by the

plaintiff, and ejecting him and his family, and removing his furniture; all of which was duly proved.

On the part of the defence, it appeared that, on Dec. 5, 1864, the house with a cellar under it, together with the land on which it stood, and to which it was attached by an underpinning of split stone, was the property of one Mrs. Black, who on that day verbally leased it to the plaintiff for $30 per year, payable quarterly; that, between that day and August 3, 1866, the plaintiff had paid to Mrs. Black in money and labor $52,86 as rent; that, on Sept. 5, 1866, Mrs. Black gave the plaintiff written notice to quit and surrender the premises in thirty days; that on Nov. 7, 1866, Mrs. Black, in consideration of $100 paid by Benjamin A. Ray, one of the defendants, executed and delivered to him a bill of sale of the house, "with the right to occupy the same where it now is, to the ground, including the underpinning, and also the right to remove the same any time before the first day of June, 1867;" that Ray took delivery and paid the consideration; that, on the same 7th of November, Ray notified the plaintiff in writing that he had purchased the house, and requested him to quit and surrender it, which the plaintiff refused to do; that thereafterwards, on same day, Ray sued out a writ of replevin for the house against the plaintiff, and, on the 13th of the same month, placed the writ with a good and sufficient replevin bond in the hands of Grant, the other defendant, who was then sheriff of the county, for service, and requested him to replevy the house; that Grant did thereupon replevy the house, eject the plaintiff and family and remove his furniture, and put Ray into possession of the house.

It also appeared that the plaintiff had overpaid the rent on the premises at the time of the alleged sale, and that, on the fifth day of November, 1866, in an action of forcible entry and detainer, brought by Mrs. Black against the plaintiff, before the police court in Belfast, for the recovery of the premises, judgment was entered in favor of the present plaintiff.

The defendants requested the presiding Judge to instruct the jury that, if they should find that Ray acted in good faith in purchasing the house, (not knowing that there was any trouble between the plaintiff and Mrs. Black about the immediate possession of it;) and that Grant acted in good faith in the service of the replevin writ, doing no more damage than was necessary in the removal of the plaintiff, his family and furniture, then the writ of replevin would be a justification for the alleged trespass and that the defendants would not be liable.

But the presiding Judge declined to give the requested instruction; but did give the following among other instructions not excepted to, viz. : — That if the jury should find that the premises in question were real estate, and that the plaintiff had exclusive possession thereof when the writ of replevin was served, that writ afforded the defendant no protection for ejecting the plaintiff and his goods ; and that, in the assessment of damages, they were authorized to find, in addition to the damages done to the furniture, a reasonable compensation to the plaintiff and wife for the injury done to their feelings in being removed from the premises.

The jury found specially that the damage done to the furniture was $25 ; and, to the plaintiff and wife, $50.

The jury returned a general verdict for the plaintiff for $75, and the defendants alleged exceptions.

*N. Abbott*, for the defendants.

1. The plaintiff's tenancy was terminated by the statute notice, and his possession afterwards was by wrong.

2. Mrs. Black, having the right of possession, had the right to sell the house without the land, and thus make it personal property.

3. Ray having bought the house and demanded it, could replevy it.

4. Plaintiff could not take advantage of the wrong by which he held possession, nor dictate the process by which an end should be put to his wrongful possession.

5. The presiding Judge erred in submitting the question, involving the nature of the property, to the jury, — that being a question of law.

6. And as to the assessment of damages.

7. The requested instruction should have been given.

8. Defendant in replevin cannot maintain trespass for taking the property replevied, — remedy is on. the replevin bond. He is estopped from bringing such action during the pendency of the replevin.

*E. K. Boyle*, for the plaintiff.

KENT, J. — The owner of the house and lot in question, gave notice to her tenant to quit. He did not, and she instituted a process of forcible entry and detainer before. a magistrate. This case was tried and judgment rendered against her and in favor of the tenant, the present plaintiff. Thereupon, two days afterwards, she executed a bill of sale to Ray, one of the defendants, of the house (which had a cellar and underpinning,) " to the ground, including the underpinning." Ray, on the same day, notified the plaintiff in writing, of his purchase, and requested him to quit, and he refused to do so. On the same day Ray sued out a writ of replevin " for the house," and put it into the hands of the other defendant, then sheriff of the county, for service, and requested him to replevy the house, and he did replevy the house, and removed the plaintiff and his family and furniture, and put Ray into possession. The plaintiff brings this action of trespass *quare clausum*, for the entry and removal, against the sheriff and Ray, who assisted him.

It is very clear that, if the plaintiff had rights as a tenant in possession, those rights could not be affected by the sale of the building, so far as to justify a forcible removal, without sufficient notice. A sale may operate to terminate a tenancy at will, when it is of the whole estate, and of the fee of the land and in the premises.

It is unnecessary to consider the effect, as between the grantor and grantee, or vendor and vendee, of the sale of

a house alone, annexed to the freehold as this was. Assuming that it made it personal property, yet, if another person was a tenant in possession, his rights cannot be lost or changed, by this change of the nature of the property, from real to personal. If a man owns a house which, by reason of its having been built on the land of another, by his consent, is regarded in law as personal property, leases it to another, the relation of landlord and tenant, and all the legal rights and duties of such relation exist and must be performed. In such a case, could the landlord, if he claimed that the tenancy at will was ended, sue out a writ of replevin, and cause it to be served by turning out the tenant and his goods and furniture? If he could do this, it would be a new mode of proceeding and would supersede all the provisions of law in relation to forcible entry and detainer and the notice required, and enable a dissatisfied lessor to adopt a remarkably summary mode of ejectment, without resort to any of the modes pointed out in the statute or common law. Where the property when leased was real estate, the same result might be obtained, by pursuing the course apparently adopted in this case, viz., sell out the building to the foundation, calling that personal property, leaving the foundation, cellar, &c., the real estate of the original owners. Whether real estate can thus be parceled out, by a common bill of sale, so that a house fixed to the freehold, and part of it, can be thus divided and held permanently, while remaining thus fixed, part personal and part real estate, might deserve consideration, if necessary to the determination of the case. It is not the case, where such a building is sold, to be immediately removed and it is so removed. The dwellinghouse, fixed like this, when sold by a bill of sale, was as much real estate as the soil on which it rests. *Cujus est solum ejus est usque ad coelum.*

But, granting that it was thus made personal property, and that, if unoccupied, it might be the subject of replevin. Can the writ of replevin authorize the forcible removal of a tenant and his family; and, if it could in any case, must

there not be a notice by the officer to the tenant to quit, giving him a reasonable time to remove?

In this case a notice was given by the purchaser, on the 7th of Nov., that he had purchased the house, with a request to quit, which plaintiff refused to do. On the 10th this writ of replevin was put into the officer's hand, and on that day executed. It does not appear that the officer made any request of the plaintiff to remove, or give him any time to do so. No time for removal had been named in the written notice by Ray. It was but three days afterwards that the officer executed the writ of replevin. We think, that even if such a replevin writ could be legally served, by removing the tenant and his family, it could only be done after giving reasonable notice and time sufficient to make the removal. It would be such a direct interference with what the law looks upon as almost sacred, — a man's dwellinghouse, when occupied by himself and family, that nothing short of a refusal or neglect to remove, after sufficient notice, could justify an officer, under a writ of replevin, in forcibly ejecting the family with its goods and furniture, if it could be executed by removal. Anything short of this would be an intolerable abuse of legal process.

Usually, the purpose of a replevin suit is to try the title to the specific article; and, in contemplation of law, the goods, in a certain sense, are in the custody of the law, to await the decision between the claimants. *Walker* v. *Osgood*, 53 Maine, 424. In the common case of moveable and portable articles, — as it is necessary that some one should take and keep possession to prevent loss or destruction, our law differs in this respect from the English law, and allows the plaintiff to take the article into his possession, upon giving bond to have it forthcoming to answer the judgment, if against him. Now, a dwellinghouse is not a portable article, or one easily removed, or likely to disappear, or be concealed. Therefore, all the real purposes of the law would be complied with, by a formal delivery of the house, as it stands, to the plaintiff. There is no necessity of a forcible removal of the tenant and his family.

The writ of replevin was never intended as a means of interference with the sanctity of home, and as an instrument to remove summarily a tenant, who has a possession which he has a right to retain, until removed by due process of the law, made and provided for such cases.

We think the Judge did not err in refusing the requested instruction as to the justification of the officer. There can be no doubt that the ruling, that, if the house was real estate, no action of replevin could be legally instituted, was correct. In the view we have taken of the case, it is not necessary to determine whether the Judge should not have determined this question, rather than have submitted it to the jury. The case finds that other instructions, not excepted to, were given. We presume that the Judge properly explained and stated the law, and what facts must be proved, to sever the house from the freehold and make it personal property. This would be proper when it is a mixed question of law and fact.

We cannot sustain that portion of the charge, which allowed the jury to find, in addition to the damages to the furniture, "a reasonable compensation to the plaintiff and wife for the injury done to *their feelings*, in being removed from the premises." The action is in the name of the husband alone. There is no allegation of loss to him by injury done to the wife. The rule given was not the one allowing vindictive or exemplary damages, but confined to the injury to the feelings of each. The instruction in terms authorized the jury to give a compensation in this action to the wife for injury to her feelings, independently of the husband. The jury, however, found specially that the injury to the furniture was twenty-five dollars, and to the plaintiff and wife fifty dollars. There can be no apportionment of this last sum. *Exceptions sustained. — New trial granted,*
*unless the plaintiff will remit all*
*but $25 in the verdict.*

APPLETON, C. J., CUTTING, WALTON and DICKERSON, JJ., concurred.