JOHN J. BROWNSEY, PLAINTIFF-RESPONDENT, v. GENERAL PRINTING INK CORPORATION, DEFENDANT-APPELLANT.

Submitted January 19, 1937—Decided July 24, 1937.

506

Before Justices TRENCHARD, BODINE and HEHER.

For the appellant, *Franklin J. Marryott.*

For the respondent, *Levitan & Levitan* (*Abraham Levitan,* of counsel).

The opinion of the court was delivered by

HEHER, J. Plaintiff seeks reparation of an injury consequent upon defendant's asserted tortious conduct. The jury empaneled to try the issue returned a verdict in favor of plaintiff; and defendant appeals from the ensuing judgment.

These are the pertinent facts and circumstances: Defendant and one Fitzsimmons were the owners of contiguous tracts of land. Defendant erected a garage on its lands, adjoining

a fence built upon what the jury could have found from the proofs was the common boundary line. The garage roof sloped downward to the boundary line, with a pitch of nineteen degrees. The fence was eight feet high. The edge of the overhanging garage roof was between a foot and a foot and a half above the fence top. On February 5th, 1936, while plaintiff was upon Fitzsimmons' premises, at his invitation, engaged in making repairs to his automobile, an icy mass, about eight and one-half inches thick, four feet wide and eight feet long, formed from snow and sleet which had accumulated on the garage roof over a period of weeks, and loosed by the elements, slid off the roof onto the plaintiff's back, inflicting the injuries for which recovery was had. There was no gutter, trough or other structural safeguard against such an occurrence. The sliding mass consisted of "three inches of ice, two and a half inches of snow, about three inches of sleet." It was a warm day, and thaw had set in.

The primary subject of inquiry, raised by motions to nonsuit and to direct a verdict in defendant's favor, is the existence of evidence to sustain the finding of liability.

*First:* It is said, *in limine,* that plaintiff was a trespasser upon defendant's property. This is predicated upon testimony adduced by defendant that "the fence in question was 4.6 feet to 5.74 feet inside the line of" defendant's property. But it was open to the jury to find from the proofs that Fitzsimmons had acquired a prescriptive right to the lands enclosed by the fence. The propriety of the submission of this factual inquiry to the jury was not raised by the motions adverted to; nor is the legal sufficiency of the pertinent instruction questioned.

*Second:* The trial theory was the negligent non-performance of a duty owing to the adjoining landowner and his invitees. The question thus presented seems to be *res nova* in this state; and its resolution requires recourse to the principles of the common law.

It was a primary concept of that system—fundamental in the social compact—that a landowner should so use his own

property as not to infringe the legal rights of others. The principle is embodied in the Latin maxim *"sic utere tuo ut alienum non laedas."* In some of its social concepts, the common law has long since been outmoded, and is not, in those respects, authoritative as a modern rule of conduct. But this particular doctrine is embedded in our civilization; it has its genesis in reason and natural justice.

At common law, a civil nuisance was defined as "anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. * * * If a man builds a house so close to mine that his roof overhangs my roof, and throws the water off his roof upon mine, this is a nuisance (to corporeal hereditaments), for which an action will lie." 3 *Bl. Com.* 216. Proprietary or possessory rights in real property include the full and free enjoyment thereof; and this definition imports an interference with a right incident to such ownership or possession.

The landowner is not possessed of an absolute right of user of his property. He is enjoined to make reasonable use thereof; and this connotes due recognition of the correlative right of the adjoining landowner to the use of his property. If the use satisfies the test of reasonableness, any incidental detriment to his neighbor is *damnum absque injuria.* But the rule absolving the owner from such consequences of user "should be narrowly limited and carefully defined." 1 *Am. Jur.* 505, 506. A use is unreasonable, and therefore unlawful, if it constitutes an appropriation of the adjoining land. And it falls into that category if it deprives the adjoining owner of the reasonable enjoyment of his property to a material degree. Compare *Deubel* v. *Millard Construction Co.,* 80 *N. J. L.* 98; *affirmed,* 82 *Id.* 523; *Costigan* v. *Pennsylvania Railroad Co.,* 54 *Id.* 233; *Marshall* v. *Welwood,* 38 *Id.* 339; *Ackerman* v. *Ellis,* 81 *Id.* 1. An owner may not extend his proprietary rights beyond the limits of his own property, and thus secure, at the expense of his neighbor, an advantage that is not justly his. It is elementary that, while every landowner may use his own land "for any lawful purpose for which in the natural course of enjoyment it can be used, yet

he cannot use his neighbor's land, except upon proof of express grant or permission, or prescription which furnishes a presumption of a grant." *Shipley* v. *Fifty Associates,* 106 *Mass.* 194. In the case of *Ackerman* v. *Ellis, supra,* Chief Justice Gummere pointed out that "trees which overhang the premises of another are a nuisance to the extent that their branches extend over such premises and the person over whose land they spread is entitled to his action for damages against the person who is responsible for their presence there," and that "this is so without regard to the extent of the damage resulting therefrom, the insignificance of the injury going to the extent of the recovery and not to the right of action."

And, while the landowner has a legal right to protect his premises against the fall of rain or snow, he is under a duty to adopt reasonable means to that end, consistent with the reciprocal right of the adjacent owner to a reasonable enjoyment of his property. He is required, in the pursuit of the right, to exercise reasonable care to safeguard the latter against injury. The general principle is embodied in the following statement of the law by Professor Cooley: "If one constructs his buildings so as to cast water therefrom upon the land of his neighbor, he commits an actionable wrong; but if he puts proper eave troughs or gutters upon his building for leading off the water upon his own ground, and keeps them in proper order, and is guilty of no negligence in this regard, an adjoining proprietor can have no legal complaint against him for injuries resulting from extraordinary or accidental circumstances, for which no one is in fault; and such injuries must be left to be borne by those on whom they fall." *Cooley Torts* (*4th ed.*), § 412.

Thus, by parity of reasoning, there is laid upon the landowner a duty to use reasonable care to safeguard his neighbor from the risk of harm, known or reasonably foreseeable, through the fall of ice and snow from the roof of a structure erected upon his premises. It is the general rule that, while the possessor of land is not liable for bodily harm resulting to others outside the land by a natural condition thereof, he is under a duty in respect of structures and other artificial

creations, classable as "non-natural," to safeguard the adjacent owner against unreasonable hazards arising from their plan, construction, location or otherwise; and that a breach of the duty resulting in damage, constitutes actionable negligence. See 2 *Torts A. L. I.,* §§ 363, 364. As said in *Shipley* v. *Fifty Associates, supra,* "no one has a right, by an artificial structure of any kind upon his own land, to cause the water which collects thereon in rain or snow to be discharged upon his neighbor's land, either in a current or stream, or in drops. \* \* \* If the defendants had constructed a reservoir in their attic, to be filled by the rain, they would clearly be liable for damage occasioned to their neighbor by the breaking down of such a reservoir. It can of course make no difference that the rain comes in the form of snow, and is lodged on the outside of the roof; in either case it is collected by an artificial structure, for the convenience of one party, without the concurrence of the other. \* \* \* He must at his peril keep the ice or snow that collects upon his own roof, within his own limits; and is responsible for all damages, if the shape of his roof is such as to throw them upon his neighbor's land, in the same manner as he would be if he threw them there himself. He has no right to appropriate his neighbor's land in that manner for his own convenience, as a place into which he may pour the accumulated snow from his own premises." See, also, *Shipley* v. *Fifty Associates,* 101 *Mass.* 251.

This principle is embedded in both the common and civil law. 1 *Am. Jur.* 508, 509. It was applied in *Davis* v. *Niagara Falls Tower Co.,* 171 *N. Y.* 336; 64 *N. E. Rep.* 4; *Smethurst* v. *Barton Square Independent Cong.,* 148 *Mass.* 261; 19 *N. E. Rep.* 387; *Hannem* v. *Pence,* 40 *Minn.* 127; 41 *N. W. Rep.* 657; *Garland* v. *Towne,* 55 *N. H.* 55. See, also, 48 *A. L. R.* 1248.

Adopting the doctrine enunciated in the leading English case of *Fletcher* v. *Rylands,* 1 *L. R.* 1 *Exch.* 265, affirmed in the House of Lords, 3 *H. L. Cas.* 330, 339, the courts of some of our American jurisdictions hold to the view that such invasion of the adjacent property rights imposes, entirely

without regard to negligence, the liability of an insurer as for a nuisance, on the theory that the adjoining proprietor is entitled to absolute immunity from such annoyance. *Shipley* v. *Fifty Associates,* 106 *Mass.* 194; *Davis* v. *Niagara Falls Tower Co., supra; Radcliff* v. *Brooklyn,* 4 *N. Y.* 195; *Huber* v. *Stark,* 124 *Wis.* 359; 102 *N. W. Rep.* 12. But this rule has been substantially modified or entirely rejected in other jurisdictions, where the test of liability is negligence. See, also, 48 *A. L. R.* 1248; 1 *Am. Jur.* 508. New Jersey is in the latter category. *Lightcap* v. *Lehigh Valley Railroad Company of New Jersey,* 90 *N. J. L.* 620; *Marshall* v. *Welwood, supra.* While a nuisance may exist notwithstanding the exercise of due care in the legal sense, it is ofttimes, if not usually, the consequent of negligence. *McAndrews* v. *Collerd,* 42 *Id.* 189; 46 *C. J.* 663.

Appellant relies upon the following adjudications by the courts of this state: *Bowlsby* v. *Speer,* 31 *N. J. L.* 351; *Town of Union* ads. *Durkes,* 38 *Id.* 20; *Lightcap* v. *Lehigh Valley Railroad Company of New Jersey, supra; Jessup* v. *Bamford Bros. Co.,* 66 *Id.* 641; *Sullivan* v. *Browning,* 67 *N. J. Eq.* 391. But they are inapposite. They deal with the general principle that the detriment incident to the natural coming upon one's land of water naturally collecting on the surface of his neighbor's, even though its course be diverted by structures erected upon the latter's land, falls into the category of *damnum absque injuria.* This doctrine, limited as it is to running surface water, manifestly has no pertinency to the instant case.

Thus it is that in this state the principles of the law of negligence govern, to a large extent, the relations of the owners of adjoining lands growing out of the contiguity. They ordinarily enter into the determination of the question of reasonable user.

So tested, the challenged motions in the instant case were properly denied. Whether a reasonably prudent man circumstanced as appellant was and mindful of his legal duty not to subject his neighbor to an unreasonable hazard, would have so acted was plainly a factual inquiry.

*Third:* And there was no error in the overruling of the question addressed to respondent's physician, designed to elicit the "history of the case" as related to him by respondent. The witness testified that he examined respondent "for the purpose of treatment and to advise him what to be done." See *Consolidated Traction Co.* v. *Lambertson,* 60 *N. J. L.* 452.

*Fourth:* Error is also predicated of an instruction relating to the duty of the landowner in respect of pedestrians on the abutting highway, in that it is not in accordance with the rule laid down in *Cavanaugh* v. *Hoboken Land Co.,* 93 *N. J. L.* 163, and *Zwickl* v. *Broadway Theatre Co.,* 103 *Id.* 604. While obviously not pertinent, it was not so framed, especially when considered in the light of the whole charge, as to mislead the jury in the application of the correct principle, and it therefore did not injuriously affect appellant's substantial rights. This is the test of reversible error laid down by section 27 of the supplement to the Practice act, enacted in 1912. *Pamph. L.* 1912, *pp.* 377, 382. Compare *Niles* v. *Phillips Express Co.,* 118 *N. J. L.* 455.

Judgment affirmed, with costs.