**STERLING v. WEINSTEIN.**

**No. 922.**

Municipal Court of Appeals for the District of Columbia.

Argued May 8, 1950.

Decided July 13, 1950.

---

Dennis Collins, Washington, D. C., for appellant.

Milton Conn, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Plaintiff—appellee—is the owner of a piece of land bordering on an unimproved public alley about ten feet wide. The building on his property extends to, or very close to, the alley line. Defendant—appellant—owns land across the alley. On defendant's land, very close to the alley line, are two rather large trees, the branches of which extend across the alley and overhang plaintiff's property. Leaves and buds from these branches fall onto plaintiff's building and on a number of occasions have stopped up the gutters and water from the gutters has overflowed the wall. Plaintiff has expended money in having the

gutters cleaned and the wall waterproofed. Plaintiff brought an action for damages and for abatement of a nuisance, and obtained judgment for $128.45 and an order requiring defendant to cut off and keep cut the overhanging branches.

Plaintiff alleged and contended that one of the trees leaned at such an angle there was danger of it falling on plaintiff's property because of dirt being washed away from its roots. Evidently the trial court did not accept this contention as the order of abatement related only to the overhanging branches and not to the tree itself. This appeal therefore raises the question whether the overhanging branches, under the circumstances stated, constituted a nuisance entitling plaintiff to relief.

While there are many statements in the books that branches of trees which overhang another's property may under certain circumstances constitute a nuisance and entitle the owner of the invaded land to an action for abatement or damages, or both,[1] there are comparatively few cases dealing squarely with the subject and they are not in accord.

In Buckingham v. Elliott, 62 Miss. 296, 52 Am.Rep. 188, where roots from mulberry trees in defendant's yard invaded plaintiff's yard and penetrated a well, polluting the water and making it unfit for domestic use, it was held that plaintiff had an action for damages. The court said: "It seems to be settled law that overhanging branches are a nuisance, and it must follow that invading roots are. * * * It is an admitted fact in this case that the roots of the mulberry trees destroyed the well. That proves the noxious character of the trees."

In Michalson v. Nutting, 275 Mass. 232, 175 N.E. 490, 76 A.L.R. 1109, roots of a poplar tree invaded adjoining land and clogged up sewer pipes, necessitating taking up the pipes on several occasions. The owner of the adjoining land sought relief by abatement and damages. The court held there was no cause of action, saying:

---

1. Wood, Law of Nuisances (1875), § 112; Countryman v. Lighthill, 24 Hun, N.Y., 405; Hoffman v. Armstrong, 46 Barb.,

N.Y., 337, affirmed 48 N.Y. 201, 8 Am. Rep. 537; Toledo, St. L. & K. C. R. Co. v. Loop, 139 Ind. 542, 39 N.E. 306.

"His (plaintiff's) right to cut off the intruding boughs and roots is well recognized. (Citations.) His remedy is in his own hands."

The above two cases are squarely contradictory, unless the "noxious" character of the mulberry roots differentiate them from the poplar roots.

In Stevens v. Moon, 54 Cal.App. 737, 202 P. 961,[2] Mead v. Vincent, 199 Okl. 508, 187 P.2d 994, and Gostina v. Ryland, 115 Wash. 228, 199 P. 298, 300, 18 A.L.R. 650,[3] relief from intruding roots by abatement was held proper. However, each of those cases was in part based on a statute. In Gostina v. Ryland, it was distinctly stated that "were it not for our statute of nuisances, the respondents herein would not be accorded any judicial relief."

In Smith v. Holt, 174 Va. 213, 5 S.E.2d 492, 495, 128 A.L.R. 1217, and Granberry v. Jones, Tenn., 216 S.W.2d 721, injunctive relief was denied in cases of invading hedges planted near the lot lines. Both cases cited with apparent approval the Massachusetts case; but the Virginia case did say it would be in accord with the Mississippi case if the facts were similar: "when it appears that a sensible injury has been inflicted by the protrusion of roots from a noxious tree or plant onto the land of another, he has, after notice, a right of action at law for the trespass committed."

Restatement, Torts, § 840, says: "Where a natural condition of land causes an invasion of another's interest in the use and enjoyment of other land, the possessor of the land containing the natural condition is not liable for such invasion."

Comment (a) under that section says "natural condition" means a condition "not in any way the result of human activity" and includes "trees, weeds and other vegetation on land which has not been made artificially receptive thereto by act of man."

Illustration 4 under that section reads: "A purchases and takes possession of land on which have been planted a number of eucalyptus trees near the boundary line of B's land. The roots of the eucalyptus trees grow into B's land with the result that walnut trees growing thereon are stunted and otherwise damaged. Although A knows of this he does not cut down the eucalyptus trees. A is subect to the rule stated in § 839, since the eucalyptus trees are not a natural condition."[4]

Restatement would therefore make liability rest on whether or not the offending tree is a natural condition of the land. This rule was adopted in Griefield v. Gibraltar Fire & Marine Insurance Co., 199 Miss. 175, 24 So.2d 356, 357, where a limb of a tree on defendant's land overhung plaintiff's house and in a windstorm broke and damaged plaintiff's roof. Previously defendant had been requested to cut the limb but had not done so. It was held that plaintiff was not entitled to recover for his damaged roof, the court saying:

"The test of the appellant's liability vel non is whether the tree from which this limb overhung the land of the appellee's assignors was of natural growth or had been planted by the appellant or a former possessor of her land. If the latter is the case, liability appears, 4 Rest., Torts, § 839; Buckingham v. Elliott, 62 Miss. 296, 52 Am.Rep. 188; but if the former is the case the appellant is not liable, 4 Rest., Torts, § 840, Comment (a). The former is the case here, for there is nothing in the agreed statement of facts to indicate that the oak tree was not of natural growth.

"The broad language of the opinion in Buckingham v. Elliott, supra, if given effect, would sustain the judgment of the Circuit Court, but when the authority of that opinion is limited, as it should be, to the issue then before the court, it will be

---

2. See also Shevlin v. Johnston, 56 Cal.App. 563, 205 P. 1087. Cf. Grandona v. Lovdal, 70 Cal. 161, 11 P. 623, and Grandona v. Lovdal, 78 Cal. 611, 21 P. 366, 12 Am. St.Rep. 121.

3. See also Forbus v. Knight, 24 Wash.2d 297, 163 P.2d 822.

4. Sec. 839 states that, subject to the conditions there stated, "a possessor of land is liable for an invasion of another's interest in the use and enjoyment of other land occurring while he is in possession, if the invasion results from an abatable physical condition on his land which he has failed to take reasonable steps to abate."

seen that the judgment there rendered is not in conflict with the rule announced in 4 Rest., Torts, § 840, for the trees there, the roots of which caused plaintiff's damage, were not of natural growth but had been planted on the defendant's land."

It is thus seen that the early Mississippi case has been restricted in its scope.

The foregoing cases are not the subject of exact classification. There is some confusion in them as to whether a tree or plant is "noxious" merely because it does injury or whether it must be inherently injurious or poisonous and there seems to be a difference of opinion as to the extent of damages required to constitute sensible or substantial damages. However, we think the cases are in agreement that trees ordinarily are not nuisances; that overhanging branches which merely cast shade or drop leaves on the land are not nuisances; that if under any circumstances overhanging branches or protruding roots do constitute a nuisance it is only when they do sensible or substantial harm;[5] and that, whether nuisances or not, a landowner may always cut away to his property line branches and roots from trees of the adjoining owner.

In our final analysis of the exact question here presented we think the California, Oklahoma and Washington cases may be eliminated from consideration because of the statutes in those states. The Tennessee and Virginia cases appear to approve the Massachusetts rule except in the case of noxious plants, that is, plants poisonous or inherently injurious. The Massachusetts case did not involve a noxious tree and neither does the case before us. Consequently, eliminating the case of a noxious plant, we have a choice of two rules. One is the Massachusetts rule denying liability of the owner of land for damages caused by roots and branches of trees invading his neighbor's premises. Second, is the Restatement rule, now adopted by Mississippi,[6] denying liability except where the trees are not a natural condition but result from human activity.

With due respect to the authority of the Restatement,[7] its rule does not appeal to us. From a practical viewpoint it is difficult to place liability on one who plants a desirable and attractive tree on his land, and deny liability against another who permits a scrubby and unattractive tree of natural growth to exist on his land. Again, from the pictures here in evidence, we suspect that in this case, and many others, it would be difficult and perhaps impossible to determine if the trees are of natural growth. And again, we think it would often be difficult to ascertain whether a tree of natural growth might not be in part the result of human activity, such as cultivating, fertilizing, trimming, etc. The distinction between purely natural conditions and conditions which in some degree are the result of man's activity may be practicable and even necessary in rural areas, but in our opinion such distinction cannot reasonably be made in our jurisdiction which is almost entirely urban.[8]

On the other hand, we are impressed by the rule laid down in the Massachusetts case of Michalson v. Nutting, supra, where it was said: "The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious."

5. Apparently to the contrary is Ackerman v. Ellis, 81 N.J.L. 1, 79 A. 883, holding the insignificance of the injury goes to the extent of recovery and not to the right of action. But cf. Brownsey v. General Printing Ink Corporation, 118 N.J.L. 505, 193 A. 824.

6. It may be that the California cases are basically in accord with Restatement. The facts in Restatement's illustration 4 apparently were taken from Stevens v. Moon, 54 Cal.App. 737, 202 P. 961. And see Crance v. Hems, 17 Cal.App.2d 450, 62 P.2d 395.

7. See Bailey v. Zlotnick, 80 U.S.App.D.C. 117, 149 F.2d 505, 162 A.L.R. 1108.

8. See Prosser, Torts, § 76; p. 607; Chambers v. Whelen, 4 Cir., 44 F.2d 340, 72 A.L.R. 611.

The simplicity and certainty of the Massachusetts rule appeals to us. It leaves no doubt as to the rights and obligations of the parties. While it places the burden on the owner of land to protect himself by cutting the invading branches and roots, generally that burden is not great. It is of some significance that in this and many other jurisdictions there have been no reported cases involving this question. This would indicate to us that generally these questions between adjoining owners may be adjusted without the aid of courts and that the self-help rule is sufficient.

We conclude that one whose land is invaded by branches and roots of trees or plants not poisonous or inherently injurious has no cause of action against the owner of such trees or plants, but may protect himself therefrom by cutting them off to the extent that they invade his property.

In view of this conclusion it is unnecessary to consider either the question of the sufficiency of the proof of damages or the question of the jurisdiction of the trial court to issue an order of abatement.

Reversed.

CAYTON, Chief Judge (dissenting).

Almost all property owners have had to contend with the usual and familiar type of inconvenience from blown or falling leaves. But the circumstances of this case are far from usual.

As we can see from the photographs in the record, one of the trees on defendant's property—the one causing the most damage—is quite large and very tall. Soil has been permitted to wash away from its roots, no support of any kind has been given the tree, and it now leans at a sharp, precarious angle several feet across a public alley onto and over plaintiff's property.

Under these circumstances it seems highly unrealistic to commend the injured property owner to the "self-help" remedy. I have no doubt that such is *one* of his remedies; but I do not agree that it is his only one. Shevlin v. Johnston, 56 Cal. App. 563, 205 P. 1087, and other cases in the majority opinion support this view. I do not agree that he must climb onto his roof and construct scaffolding (or engage others to do the dangerous work for him) and saw off the limbs of defendant's trees. I think he has the right to demand that defendant abate the nuisance or pay for the damage caused thereby, just as he would have the right to demand that an adjoining property owner remove an unsafe structure which constituted a threat of danger. "A property owner, it is said, has no more right to keep on his premises an unsound tree near the house of his neighbor, on which it is liable to fall, than he would have to keep a dilapidated and unsafe building in the same position. It is his duty to maintain his premises in such a condition that they should not become a cause of injury to his neighbor's property in a way that common prudence should foresee."[1]

I do not consider it of great importance whether this particular tree is "of natural growth" or otherwise; or whether it was "noxious" in character or not. The important fact is that the tree is in a state of bad neglect—defendant conceding that it has remained in its present condition for more than eight years.

Finally (speaking extrajudicially), I agree with my colleagues that problems like this can usually be solved without the aid of courts, and I think that reason and fairness should long ago have suggested to defendant that she remove the dangerous and offending tree.

1. 1 Am.Jur., Adjoining Landowners, § 57.