IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 13, 2002 Session

## GLORIA B. LANE v. W.J. CURRY & SONS

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. 301117 T.D.  Robert L. Childers, Judge**

---

**No. W2000-01580-SC-R11-CV - Filed December 19, 2002**

---

We granted review in this case to determine whether a landowner can bring a nuisance action against an adjoining landowner when tree branches and roots from the adjoining landowner's property encroach upon and damage the neighboring landowner's property.  The plaintiff asserts that encroaching branches and roots from the defendant's trees constitute a nuisance for which she is entitled to seek damages.  The defendant responds that the plaintiff's sole remedy is self-help and, therefore, the plaintiff may not recover for any harm caused by the defendant's trees. The trial court and Court of Appeals agreed with the defendant, and held that an adjoining landowner's only remedy is self-help and that a nuisance action cannot be brought to recover for harm caused by encroaching tree branches and roots.

We have determined that self-help is not the sole remedy of an adjoining landowner and that a nuisance action may be brought when tree branches and roots from the adjacent property encroach upon and damage the neighboring landowner's property.  Although encroaching trees and plants are not nuisances merely because they cast shade, drop leaves, flowers, or fruit, or just because they encroach upon adjoining property either above or below the ground, they may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property.  If so, the owner of the tree or plant may be held responsible for harm caused by it and may also be required to cut back the encroaching branches or roots, assuming the encroaching vegetation constitutes a nuisance.  We do not, however, alter existing Tennessee law that the adjoining landowner may, at his own expense, cut away the encroaching vegetation to the property line whether or not the encroaching vegetation constitutes a nuisance or is otherwise causing harm or potential harm to the adjoining property.  We further find that the record in this case is sufficient to establish liability for nuisance. Accordingly, the judgment of the Court of Appeals affirming the trial court's dismissal of the case is reversed.  The case is remanded to the trial court for a determination of damages and other appropriate relief.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Trial Court and Court of Appeals Reversed and Remanded**

FRANK F. DROWOTA, III, C.J. delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JR., JJ., joined.

Elder Shearon, III, Memphis, Tennessee, for the plaintiff-appellant, Gloria B. Lane.

Robert A. Cox and James F. Horner, Jr., Memphis, Tennessee, for the defendant-appellee, W.J. Curry & Sons.

**OPINION**

### Factual and Procedural Background

This case involves a dispute between adjacent property owners over harm caused by encroaching tree branches and roots. The plaintiff, Gloria Lane, owns a house in Memphis located next door to a house owned by the defendant, W.J. Curry & Sons. The plaintiff, who is 47-years old and unemployed, has lived in the house all of her life. Her disabled brother lives with her. The defendant's house is used as rental property and is occupied. The houses in the parties' neighborhood are at least fifty-years old and are situated close together.

The defendant has three large, healthy oak trees located on its property near the common boundary line with the plaintiff. The trees are much taller than the parties' houses and have limbs, described as "extremely protruding," that hang over the plaintiff's house. The defendant's trees were described as "overshadowing the [plaintiff's] entire house." The plaintiff has had problems with the trees' limbs and roots encroaching upon her property for many years. Her roof, for example, had to be replaced in the late 1980s because the overhanging branches did not allow the roof to ever dry, causing it to rot. The plaintiff testified that prior to that time "[e]very roof and wall in [her] house had turned brown and the ceiling was just falling down. We would be in bed at nighttime and the ceiling would just fall down and hit the floor."

In 1997, a large limb from one of the defendant's trees located between the parties' houses broke off and fell through the plaintiff's roof, attic, and kitchen ceiling, causing rainwater to leak into the interior of her home.[1] The water ruined the plaintiff's ceilings, floor, and the stove in her kitchen. The plaintiff is not physically able to cut the limbs back that hang over her house, and she cannot afford to hire someone else to do it. Nor can she afford to repair the damage to the exterior and interior of her home, including the hole in her roof.

---

[1] It appears based on photographs contained in the record that the limb came from a tree that was only a few feet from the plaintiff's house.

In addition to the harm caused by the overhanging branches, roots from the defendant's trees have infiltrated and clogged the plaintiff's sewer line, causing severe plumbing problems. The plaintiff has tried to chop the encroaching roots over the years, but they keep growing back and causing more plumbing problems. The plaintiff has not been able to use her toilet, bathtub, or sink in two years because of the clogged sewer pipes. She must go to a neighbor's house to use the restroom. Raw sewage bubbles up into her bathtub, and her bathroom floor has had to be replaced because her toilet continually backs up and water spills onto her floor. Neighbors have complained to the plaintiff about the smell of sewage coming from her property. The plaintiff testified regarding the condition of her home that "everything is all messed up. I can't bathe. I can't cook. I don't want people coming to my house because it has odors in it, fleas, flies, bugs. It's just been awful for me." The plaintiff is under the care of a psychiatrist and takes medication for emotional problems. She testified that she may have to move out of her house because she "just can't take too much more."

After the defendant's branch fell through her roof, the plaintiff contacted Judith Harris, the owner of defendant W.J. Curry & Sons, to complain about the encroaching trees and to inform Harris of the damage caused by the fallen limb. Harris sent a tree trimming company to the property to cut back the overhanging limbs, but this proved unsatisfactory because branches high up in the trees were not cut, and those that were cut grew back. Harris eventually told the plaintiff that she, the plaintiff, could trim the branches or roots, but that Harris no longer felt any responsibility to remedy the situation.

The plaintiff subsequently filed suit in General Sessions Court seeking damages to the exterior and interior of her house and plumbing system caused by the encroaching branches and roots. The General Sessions Court found in favor of the defendant. The plaintiff appealed the adverse judgment to Circuit Court. After conducting a bench trial, the Circuit Court found that the plaintiff was physically and financially unable to have the overhanging branches cut or the roots destroyed. Nonetheless, the trial court concluded that the plaintiff's sole remedy was self-help and that the defendant's trees could not constitute an actionable nuisance. The trial court explained that although it was "certainly a serious situation that the plaintiff has not been able to use her bathroom for two years . . . these three trees are alive and living and they do what trees normally do. They produce branches and grow and they produce a root system. And even though you trim the branches back or you trim the roots back, they are going to produce more branches and more roots."

On appeal, the Court of Appeals agreed with the trial court's finding that the plaintiff was financially and physically unable to engage in self-help beyond what she had already tried without success. Nonetheless, after noting that "the three oaks at issue are viable, healthy, and innoxious trees whose natural growth is accompanied by the extension of their branches and roots over and into" the plaintiff's property, the intermediate court concluded that the plaintiff's only remedy was self-help and that her nuisance action could not be sustained. Accordingly, the Court of Appeals affirmed the trial court's dismissal of the case.

## Analysis

### I. Granberry v. Jones

In finding that the plaintiff's only remedy was self-help and that a nuisance claim cannot be brought for harm caused by encroaching tree branches and roots, both lower courts relied on this Court's decision in Granberry v. Jones, 216 S.W.2d 721 (Tenn. 1949). In Granberry, the parties owned residences on adjacent lots. The defendant planted a hedge row on her property near the common boundary line, which eventually grew to a height of twenty feet. Branches and foliage from the defendant's hedge encroached upon the plaintiff's property and rested against his house. The plaintiff alleged that the hedge row was a nuisance because its branches and foliage blocked the view from his windows and created a sanctuary for insects. He also alleged that damp conditions associated with the hedge caused the decay of his window sills, a wall, and a fence. The plaintiff sought an order requiring the defendant to either remove or trim the hedge. He also sought an award of damages. Id. at 722.

This Court held in Granberry that the plaintiff "had the legal right to cut any branches or foliage which to any extent hung over his soil from the hedge growing upon the adjoining land." Id. at 722-23. In reaching this conclusion, we relied on the then prevailing rule that "no landowner has a cause of action from the mere fact that the branches of an innoxious tree, belonging to an adjoining landowner, overhang his premises, his right to cut off the overhanging branches being considered a sufficient remedy." Id. at 723. The rationale for the rule was that a landowner has the "liberty to use his land, and all of it, to grow trees [and] their growth naturally and reasonably will be accompanied by the extension of boughs and the penetration of roots over and into adjoining property of others." Id. at 723 (quoting Michalson v. Nutting, 175 N.E. 490 (Mass. 1931)). We also noted that limiting a plaintiff's remedy to self-help would avoid subjecting landowners to the "annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious." Id.

However, we went on in Granberry to observe that "our conclusion . . . is without prejudice to whatever rights, if any, [the plaintiff] may have for recovery of the expense to which he may be put now or hereafter in cutting the overhanging branches or foliage." Id. Thus, Granberry left open the possibility of the injured landowner recovering damages, or at least expenses, after the landowner availed himself to self-help remedies. This aspect of Granberry was not mentioned by the Court of Appeals in the present case, thereby leaving the impression that a landowner has no remedy other than self-help, even when the encroaching vegetation causes actual harm to the neighboring property.

The plaintiff here argues that (1) Granberry did not expressly foreclose the possibility of a nuisance action; (2) Granberry is distinguishable from this case because it involved a hedge row which could easily be controlled by pruning, as opposed to large trees towering over adjoining property with the potential for causing serious injury; (3) Granberry did not involve damage caused by underground roots; and (4) cases decided in other jurisdictions since Granberry have allowed

nuisance claims for the removal of encroaching vegetation and, where appropriate, for damages. The thrust of the plaintiff's position is that the defendant's trees constitute a nuisance.

The defendant responds that under Granberry the plaintiff's sole remedy is self-help and, therefore, the plaintiff cannot recover for any harm caused by the defendant's trees. The defendant asserts that self-help is a sufficient remedy because the plaintiff is in the best position to prevent harm to her property by exercising self-help. The defendant also argues that allowing a cause of action every time a tree or plant encroaches upon another's land would spawn innumerable and possibly trivial lawsuits. The defendant further argues that its trees should not be regarded as a nuisance because the trees are living, healthy trees doing what nature compels them to do --- produce branches and a root system. Finally, the defendant claims that since the plaintiff experienced problems with the trees for many years before notifying Harris of that fact, she should be estopped from now asserting her rights.[2]

## II. Approaches Taken in Other Jurisdictions

We begin our analysis of this case by observing that since Granberry was decided in 1949, states considering the question of encroaching vegetation have taken a number of different approaches. The courts uniformly hold that a landowner has a remedy of self-help, meaning that the landowner has the right to cut encroaching branches, roots, and other growth to the property line, but may not enter the adjoining property to chop down the tree or plant or cut back growth without the adjoining property owner's consent. See Robert Roy, Annotation, Encroachment of Trees, Shrubbery, or Other Vegetation Across Boundary Line, 65 A.L.R. 4th 603 (1988). Thus, jurisdictions that have considered the matter, including Tennessee, permit the landowner whose property is encroached by overhanging branches and roots to trim them to the extent of the encroachment.[3] Some states apply this rule even if the encroaching limbs and roots are not causing

---

[2]The defendant's estoppel argument was not raised or decided in the trial court. Therefore, the issue is waived. See In Re Adoption of E.N.R., 42 S.W.3d 26, 31-32 (Tenn. 2001). Even if the issue had been raised, it would have availed the defendant nothing because the plaintiff attempted self-help, unlike the plaintiff in Granberry, by chopping away what roots she could. Thus, it cannot be said that the plaintiff merely sat on her rights. Furthermore, we note that branches and roots can constitute a continuing nuisance which can recur no matter what the injured party does by way of self-help, absent the removal or destruction of the tree. As one court has said, "given the rather unremarkable observation that trees will tend to grow, the trespass, even if remedied once, is bound to recur just as soon as the trees or shrubbery regenerate." Jones v. Wagner, 624 A.2d 166, 170 (Pa. Super. Ct. 1993). Finally, we note that although the defendant asserted a statute of limitations defense in its answer to the complaint and argued the issue at trial, the statute of limitations issue has not been raised on appeal.

[3]See, e.g., Drummond v. Franck, 41 So.2d 268, 273 (Ala. 1949); Cannon v. Dunn, 700 P.2d 502, 503 (Ariz. Ct. App. 1985); Bonde v. Bishop, 245 P.2d 617, 620 (Cal. Ct. App. 1952); McCrann v. Town Plan and Zoning Comm., 282 A.2d 900, 906 (Conn. 1971); Sterling v. Weinstein, 75 A.2d 144, 148 (D.C. Cir. 1950); Gallo v. Heller, 512 So.2d 215, 216 (Fla. Ct. App. 1987); Whitesell v. Houlton, 632 P.2d 1077, 1079 (Haw. Ct. App. 1981); Lemon v. Curington, 306 P.2d 1091, 1092 (Idaho 1957); Toledo, St. Louis and Kansas City R.R. Co. v. Loop, 39 N.E. 306, 307 (Ind. 1894); Pierce v. Casady, 711 P.2d 766, 767 (Kan. Ct. App. 1985); Michalson v. Nutting, 175 N.E. 490, 491 (Mass. 1931);

(continued...)

-5-

any harm to the adjoining property. <u>See</u>, <u>e.g.</u>, <u>Jones v. Wagner</u>, 624 A.2d 166, 168-69 (Pa. Super. Ct. 1993). These courts reason that from "ancient times" it has been the accepted rule that a landowner has the exclusive right to possess and use all of the landowner's property, including the air space above the ground, and therefore the redressable harm caused by encroaching trees is that of the trespass onto the neighboring property, not physical damage done to the neighboring land. <u>Id.</u> at 169.

Although the jurisdictions uniformly agree that self-help is an appropriate remedy, they are divided on the availability of any remedy beyond self-help. In some states, for example, harm caused by encroaching branches and roots is not actionable at all, so self-help is the landowner's exclusive remedy.[4] Courts adopting this approach, called the "Massachusetts rule," express the concern that "to grant a landowner a cause of action every time tree branches, leaves, vines, shrubs, etc., encroach upon or fall on his property from his neighbor's property, might well spawn innumerable and vexatious lawsuits." <u>Melnick v. C.S.X. Corp.</u>, 540 A.2d 1133, 1137 (Md. 1988). The Massachusetts rule, however, has been criticized as being outdated, having evolved in an earlier time when land was mostly unsettled and people lived predominately in rural settings. <u>See</u> <u>Chandler v. Larson</u>, 500 N.E.2d 584, 587 (Ill. Ct. App. 1986).[5] The Massachusetts rule has also been criticized as fostering a "law of the jungle" mentality because self-help effectively replaces the law of orderly judicial process as the only way to adjust the rights and responsibilities of disputing neighbors. As one court has observed, "in the long run neighborhood quarrels and petty litigation will be minimized rather than magnified by a rule that does not require an exercise of self-help before permitting an action to enforce legal rights." <u>Ludwig v. Creswald, Inc.</u>, 7 Pa. D. & C.2d 461, 464 (1956). Finally, some courts have questioned whether the Massachusetts rule is fair given that it deprives deserving plaintiffs of any meaningful redress when their property is damaged. <u>See</u> <u>Whitesell v. Houlton</u>, 632 P.2d 1077, 1079 (Haw. Ct. App. 1981). A strict application of the Massachusetts rule to the present case, for example, would leave the plaintiff with no remedy for the hole in her roof or for being unable to use the only bathroom in her house for two years.

---

[3](...continued)

<u>Melnick v. C.S.X. Corp.</u>, 540 A.2d 1133, 1135 (Md. 1988); <u>Holmberg v. Bergin</u>, 172 N.W.2d 739, 744 (Minn. 1969); <u>Jurgens v. Wiese</u>, 38 N.W.2d 261, 263 (Neb. 1949); <u>Wegener v. Sugarman</u>, 138 A. 699, 700 (N.J. 1927); <u>Loggia v. Grobe</u>, 491 N.Y.S.2d 973, 974 (1985); <u>Jones v. Wagner</u>, 624 A.2d 166, 168 (Pa. Super. Ct. 1993); <u>Rosa v. Oliveira</u>, 342 A.2d 601, 605 (R.I. 1975); <u>Ogle v. Trotter</u>, 495 S.W.2d 558, 565 (Tenn. Ct. App. 1973); <u>Cobb v. Western Union Tel. Co.</u>, 98 A. 758, 759 (Vt. 1916); <u>Gostina v. Ryland</u>, 199 P. 298, 301 (Wash. 1921).

[4]<u>See</u>, <u>e.g.</u>, <u>Sterling v. Weinstein</u>, 75 A.2d 144, 148 (D.C. Cir. 1950); <u>Richmond v. Gen. Eng'g Enter. Co.</u>, 454 So.2d 16, 17 (Fla. Ct. App. 1984); <u>Schwalbach v. Forest Lawn Mem'l Park</u>, 687 S.W.2d 551, 552 (Ky. Ct. App. 1985); <u>Michalson v. Nutting</u>, 175 N.E. 490, 491 (Mass. 1931); <u>Melnick v. C.S.X. Corp.</u>, 540 A.2d 1133, 1137 (Md. 1988).

[5] "The traditional rule of non-liability [the Massachusetts rule] developed at a time when land was mostly unsettled and uncultivated. The landowner, unable to keep a daily account of and remedy all of the dangerous conditions arising out of purely natural causes, was therefore shielded from liability out of necessity. While there are many reasons to continue the traditional rule in regions that are largely rural, there is little or no reason to apply it in urban and other developed areas. In urban centers it would not be unduly burdensome for a small property owner to inspect his property and to take reasonable precautions against dangerous natural conditions." <u>Chandler</u>, 500 N.E.2d at 587 (citations omitted).

Other jurisdictions have adopted what is commonly called the "Restatement rule," which imposes an obligation upon a landowner to control the landowner's encroaching vegetation when the vegetation is "artificial" (i.e., planted or maintained by a person), but not when the encroaching vegetation is "natural." See Restatement (Second) of Torts §§ 839, 840 (1979).[6] Although a few states follow the Restatement rule,[7] most have rejected it because the distinction between artificial and natural vegetation is unworkable given the inherent difficulty of ascertaining the origin of a particular tree or plant. See Harvey v. Hansen, 445 A.2d 1228, 1231 (Pa. Super. Ct. 1982) (distinguishing between artificial and natural vegetation is "arbitrary at best"). As one court has observed, "it would often be difficult to ascertain whether a tree of natural growth might not be in part the result of human activity, such as cultivating, fertilizing, trimming, etc. The distinction between purely natural conditions and conditions which in some degree are the result of man's activity. . . cannot reasonably be made. . . ." Sterling, 75 A.2d at 147. Finally, distinguishing between artificial and natural vegetation leads to the anomaly of imposing liability upon one who improves and maintains his property, while precluding liability of an adjacent landowner who allows the natural condition of his property to "run wild." Harvey, 445 A.2d at 1231.

Another approach is the "Virginia rule," which provides that the injured landowner is limited to self-help unless the encroaching tree or plant is "noxious" and causes actual harm to the neighboring property. See, e.g., Cannon Dunn, 700 P.2d 502, 504 (Ariz. Ct. App. 1985); Smith v. Holt, 5 S.E.2d 492, 495 (Va. 1939). Confusion exists over whether a tree or plant is noxious merely because it causes injury, or whether it must be inherently injurious or poisonous. Melnick, 540 A.2d at 1137. Few jurisdictions follow the Virginia rule because of the inherent "difficulty of determining exactly what is a noxious tree or plant." Id.

Several jurisdictions have adopted the "Hawaii rule," which holds that living trees and plants are ordinarily not nuisances, but can become so when they cause actual harm or pose an imminent danger of actual harm to adjoining property.[8] Under this approach, "when overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, [substantial] harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit, the damaged or imminently endangered neighbor may require the owner of the tree to pay for

---

[6] "A purchases and takes possession of land on which have been planted a number of eucalyptus trees near the boundary line of B's land. The roots of the eucalyptus trees grow into B's land, with the result that walnut trees growing thereon are stunted and otherwise damaged. Although A knows of this, he does not cut down the eucalyptus trees. A is subject to the rule stated in § 839 [he is subject to liability for nuisance], since the eucalyptus trees are not a natural condition." Restatement (Second) of Torts § 840, cmt. a, illus. 4 (1979).

[7] See, e.g., Ken Cowden Chevrolet, Inc. v. Corts, 316 N.W.2d 259, 261 (Mich. Ct. App. 1982); Griefield v. Gibralter Fire & Marine Ins. Co., 24 So.2d 356, 357-58 (Miss. 1946).

[8] See, e.g., Whitesell v. Houlton, 632 P.2d 1077 (Haw. Ct. App. 1981); Chandler v. Larson, 500 N.E.2d 584 (Ill. Ct. App. 1986); Toledo, St. Louis and Kansas City R.R Co. v. Loop, 39 N.E. 306 (Ind. 1894); Pierce v. Casady, 711 P.2d 766 (Kan. Ct. App. 1985); Holmberg v. Bergin, 172 N.W.2d 739 (Minn. 1969); Abbinett v. Fox, 703 P.2d 177 (N.M. Ct. App. 1985); Turner v. Coppola, 424 N.Y.S.2d 864 (N.Y. Sup. Ct. 1980); Rautsaw v. Clark, 488 N.E.2d 243 (Ohio Ct. App. 1985). See also Mead v. Vincent, 187 P.2d 994 (Okla. 1947).

the damages and to cut back the endangering branches or roots, and if such is not done within a reasonable time, the . . . neighbor may cause the cutback to be done at the tree owner's expense." Whitesell v. Houlton, 632 P.2d 1077, 1079 (Haw. Ct. App. 1981). However, the injured landowner "may always, at his own expense, cut away only to his property line above and below the surface of the ground any part of the adjoining landowner's tree or other plant life" that encroach upon the property. Id. The Hawaii approach thus addresses the flood of litigation concern expressed by some courts over the natural processes and cycles of trees, roots, and other vegetation, by imposing a requirement of actual harm or imminent danger of actual harm to the adjoining property. Hence, the mere fact that tree limbs or roots extend to another's property does not by itself constitute an actionable nuisance. Moreover, the Hawaii rule does not rely on distinctions made by the Restatement and Virginia rules that have been described variously as "unworkable," "vague," "difficult to apply," and "largely arbitrary." Melnick, 540 A.2d at 1138. At the same time, the rule provides a meaningful remedy in deserving cases, i.e., those involving actual harm or imminent danger of actual harm. The rule has been described as "realistic and fair" because the "owner of the tree's trunk is the owner of the tree, [and therefore] he bears some responsibility for the rest of the tree . . . ." Whitesell, 632 P.2d at 1079.

Finally, at least one court has gone so far as to permit the adjoining landowner to compel the owner of a tree to remove it to the extent of the encroachment, plus recover damages, including expenses incurred in the course of exercising a self-help remedy, in the absence of any actual harm to the property. Jones, 624 A.2d at 171. Under this view, a landowner "may avail himself of every available remedial avenue," self-help or a suit for damages or both, in the absence of harm or potential harm to the property in order to "protect the incidents of land ownership" and "freely enjoy unencumbered and exclusive use of property he rightfully possesses." Id. "Anything less. . . is a travesty." Id. As we see it, however, this approach is problematic because no actual harm or danger of harm to the property is required to bring suit. Permitting a cause of action every time a tree or plant so much as drops a leaf or casts shade upon another's land could well subject landowners to the "annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious." Granberry, 216 S.W.2d 723.

III.

A. The Rule We Adopt

After carefully considering the various approaches of other jurisdictions and our own decision in Granberry, we have decided to join the growing number of states that have adopted the Hawaii approach. We do so for several reasons. First, the Hawaii approach strikes an appropriate balance between the competing rights of adjacent property owners. As stated by one court, "[t]his approach voices a rational and fair solution, permitting a landowner to grow and nurture trees and other plants on his land, balanced against the correlative duty of a landowner to ensure that the use of his property does not materially harm his neighbor." Abbinett, 703 P.2d at 181. We agree that since the "owner of the tree's trunk is the owner of the tree, he [should] bear some responsibility for

the rest of the tree." Whitesell, 632 P.2d at 1079. Second, we are persuaded that the Hawaii approach is stringent enough to discourage trivial suits, but not so restrictive that it precludes a recovery where one is warranted. Although some courts express the concern of spawning numerous lawsuits, we note that states which do not limit a plaintiff's remedy to self-help have apparently not suffered any such flood of litigation. Imposing a requirement of actual harm or imminent danger of actual harm to the adjoining property is a sufficient and appropriate gatekeeping mechanism. Third, we agree with the notion that limiting a plaintiff's remedy to self-help encourages a "law of the jungle" mentality because self-help replaces the law of orderly judicial process as the exclusive way to adjust the rights and responsibilities of disputing neighbors. It seems that more harm than good can come from a rule that encourages angry neighbors to take matters into their own hands. Fourth, the Hawaii rule does not depend upon difficult to apply or unworkable distinctions, a major disadvantage of the Restatement and Virginia approaches. We do not wish to place our courts in the difficult, and sometimes impossible, position of having to ascertain the origin of a particular tree or other vegetation. Nor should landowners who allow their property to run wild be shielded from liability while those who maintain and improve their land be subject to liability. The law should not sanction such an anomaly. Fifth, the Hawaii approach is consistent with the principle of self-help embraced in Granberry. The rule is also consistent with Granberry's recognition that a landowner may recover the "expense to which he may be put now or hereafter in cutting the overhanging branches or foliage," assuming the encroaching vegetation constitutes a nuisance. Granberry, 216 S.W.2d at 723. Finally, the rule we adopt today is in keeping with the aim of the law to provide a remedy to those who are harmed as a result of another's tortious conduct. See Camper v. Minor, 915 S.W.2d 437, 441 (Tenn. 1996).

Accordingly, we hold that encroaching trees and plants are not nuisances merely because they cast shade, drop leaves, flowers, or fruit, or just because they happen to encroach upon adjoining property either above or below the ground. However, encroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property. If so, the owner of the tree or plant may be held responsible for harm caused by it, and may also be required to cut back the encroaching branches or roots, assuming the encroaching vegetation constitutes a nuisance. We do not, however, alter existing Tennessee law that the adjoining landowner may, at his own expense, cut away the encroaching vegetation to the property line whether or not the encroaching vegetation constitutes a nuisance or is otherwise causing harm or possible harm to the adjoining property. Thus, the law of self-help remains intact as it has since 1949 when Granberry was decided.[9]

---

[9]It is important to note, however, that dead or decaying trees that cause harm are in a category of their own and require a different analysis. Unlike the cases involving harm caused by live trees, which are based on nuisance or trespass principles, cases involving dead or decaying trees are typically analyzed according to negligence concepts. Thus, liability usually turns on whether the defendant landowner lived in an urban or rural area, and whether the defendant knew or should have known that the tree was dead or decaying and therefore was on notice that the tree might fall. See, e.g, Staples v. Duell, 494 S.E.2d 639 (S.C. Ct. App. 1997); Taylor v. Higley, No. 02A01-9207-CV-00194, 1993 WL 137593 (Tenn. Ct. App. May 3, 1993); see also Restatement (Second) of Torts §363(2) (1965); Dan B. Dobbs, The Law of Torts 588-89 (2000). The trees involved in the present case are live, healthy trees. Thus, we do not reach

(continued...)

## B. Private Nuisance

As indicated above, the plaintiff asserts that the defendant's trees constitute a private nuisance. Tennessee courts have defined a private nuisance as "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable . . . [and] extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." Pate v. City of Martin, 614 S.W.2d 46, 47 (Tenn. 1981).[10] Depending on the surroundings, activities that constitute a nuisance in one context may not constitute a nuisance in another. Whether a particular activity or use of property amounts to an unreasonable invasion of another's legally protectable interests depends on the circumstances of each case, such as the character of the surroundings, the nature, utility, and social value of the use, and the nature and extent of the harm involved. Id.

Tennessee's definition of private nuisance is typical of how most states have defined the tort, both now and in the past. See Restatement (Second)of Torts § 821D (1979). Indeed, actions based on the unreasonable interference with another's interest in the private use and enjoyment of property date back to the twelfth century in England. Id. at cmt. a.[11] Nuisance law has since developed over the centuries to the point where a nuisance may now consist of a physical condition on the land itself (i.e., vibrations, pollution, or flooding), cause discomfort or inconvenience to the occupants of the property (i.e., odors, dust, smoke, noise), or consist of a condition on adjoining property which impairs the occupier's tranquility (i.e., conducting an unlawful business or keeping diseased animals). W. Page Keeton, Prosser and Keeton on the Law of Torts 619-20 (5th ed. 1984). So "long as the interference is substantial and unreasonable, such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance." Id. at 620. Thus, nuisance does not describe a defendant's conduct, but a type of harm suffered by the plaintiff. See Zollinger v. Carter, 837 S.W.2d 613, 615 (Tenn. Ct. App. 1992).

A party who has been subjected to a private nuisance may be entitled to several types of remedies. Since at least the mid-1800s, courts in Tennessee have had the authority to order the

---

[9](...continued)
the question in this case of whether or to what extent liability may be imposed for harm caused by a dead or decaying tree. That subject must await an appropriate case.

[10]In contrast to a private nuisance, a public nuisance is the interference with the public's use and enjoyment of a public place. Metropolitan Gov't of Nashville v. Counts, 541 S.W.2d 133, 138 (Tenn. 1976).

[11]In one of the first published private nuisance cases, William Aldred's Case, 77 Eng. Rep. 816 (1610), the plaintiff filed suit because the defendant "erected a hogstye so near the house of the plaintiff that the air thereof was corrupted." Id. The plaintiff claimed that he was "disturbed in and hindered from enjoying" his property. Id. In response, the defendant argued that the plaintiff "ought not to have so delicate a nose that he cannot bear the smell of hogs." Id. at 817. The court found for the plaintiff, concluding that "it may be that before time of memory [a landowner has had a right to] wholesome air" on his property. Id. at 821. The defendant was thus found liable for depriving the plaintiff of the "use and profit of his house." Id. at 821-22.

nuisance abated. Tenn. Code Ann. § 29-3-114. Thus, a plaintiff may be entitled to injunctive relief, especially where the nuisance is likely to continue. Pate, 614 S.W.2d at 48. Further, in cases involving a temporary private nuisance, which is one that can be corrected, damages may be awarded for the cost of restoring the property to its pre-nuisance condition, as well as damages for inconvenience, emotional distress, and injury to the use and enjoyment of the property. Pryor v. Willoughby, 36 S.W.3d 829, 831 (Tenn. Ct. App. 2000). The typical way of measuring injury to the use and enjoyment of the property is the decrease in rental value of the property while the nuisance existed. Id.; see also Pate, 614 S.W.2d at 48 (noting that the measure of damages is the "injury to the value of the use and enjoyment of the property, which is usually shown by evidence of the extent that the rental value of the property is diminished by the nuisance"). Accordingly, courts provide an appropriate remedy in the form of either damages or injunctive relief or both.

## C. Application to this Case

Applying the principles we have adopted to the present case, it is clear that the defendant's trees satisfy Tennessee's definition of a private nuisance, i.e., "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. . . [and] extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." Pate, 614 S.W.2d at 47. The record reveals that the defendant's trees caused a hole in the plaintiff's roof. Water from that hole ruined the plaintiff's ceilings and the stove in her kitchen. Also, it is uncontroverted that the plaintiff has severe plumbing problems as a result of encroaching roots. The plaintiff has not been able to use her bathroom sink or tub in two years. Nor can she flush her toilet. She must go to a neighbor's house to use the restroom. Raw sewage bubbles up into her bathtub. Her bathroom floor has been replaced because her toilet continually backs up, spilling water onto her floor. Neighbors have complained to her about the foul smell of sewage coming from her property. When asked about the condition of her home, the plaintiff replied, "everything is all messed up. I can't bathe. I can't cook. I don't want people coming to my house because it has odors in it, fleas, flies, bugs. It has just been awful for me." These circumstances have understandably taken a toll on the plaintiff. She is under the care of a psychiatrist and takes medication for emotional problems. She testified that she may have to move out of her house because she "just can't take too much more." Clearly, the defendant's encroaching trees have adversely affected the plaintiff's reasonable and ordinary use and occupation of her home, not to mention posing hazards to the plaintiff's health and safety. Accordingly, we reject the defendant's assertion that its trees do not constitute a nuisance.

## **Conclusion**

After carefully considering the record and relevant authorities, we conclude that the lower courts erred in finding that the plaintiff's sole remedy was self-help. Encroaching trees and plants are not nuisances merely because they cast shade, drop leaves, flowers, or fruit, or just because they happen to encroach upon adjoining property either above or below the ground. However,

-11-

encroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property. If so, the owner of the tree or plant may be held responsible for harm caused by it, and may also be required to cut back the encroaching branches or roots, assuming the encroaching vegetation constitutes a nuisance. We do not, however, alter existing Tennessee law that the adjoining landowner may, at his own expense, cut away the encroaching vegetation to the property line whether or not the encroaching vegetation constitutes a nuisance or is otherwise causing harm or possible harm to the adjoining property. We further find that the record in this case is sufficient to establish liability for nuisance. Accordingly, the judgment of the Court of Appeals affirming the trial court's dismissal of the case is reversed. The case is remanded to the trial court for a determination of damages and other appropriate relief, such as ordering the nuisance abated (i.e., order the trees removed).[12] Costs of this appeal are taxed to the defendant, W.J. Curry & Sons, for which execution may issue if necessary.

 

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE

---

[12]The trial court made no findings regarding damages or whether abatement of the nuisance would be appropriate.