Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

RICHARD A. FANCHER                          OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 062339                     September 14, 2007

JOSEPH B. FAGELLA

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       M. Langhorne Keith, Judge

     This is an interlocutory appeal taken pursuant to Code

§ 8.01-670(B)(1) from an order denying injunctive relief.  The

dispositive question is whether an injunction may issue to

compel an adjoining landowner to remove a tree, the roots of

which intrude into, and cause significant, continuous and

increasing structural damage to the plaintiff's property.  The

appeal requires us to revisit our holding in Smith v. Holt,

174 Va. 213, 5 S.E.2d 492 (1939).

                        Facts and Proceedings

     The essential facts are not in dispute.  Richard A.

Fancher and Joseph B. Fagella are the owners of adjoining

townhouses in the Cambridge Court subdivision in Fairfax

County.  Fagella's property is higher in elevation than

Fancher's and a masonry retaining wall running along the

property line behind the townhouses supports the grade

separation.  There is a sunken patio behind Fancher's

townhouse, covered by masonry pavers.

Fancher brought this suit against Fagella, alleging that Fagella has on his property a large sweet gum tree that constitutes a noxious nuisance; the tree's invasive root system has damaged and displaced the retaining wall between the parties' properties, displaced the pavers on Fancher's patio, caused blockage of his sewer and water pipes and has impaired the foundation of his house. Fancher also complained that the tree's overhanging branches grow onto his roof, depositing leaves and other debris onto his roof and rain gutters. He contended that he had attempted self-help, by trying to repair the damage to the retaining wall and the rear foundation of the house, as well as trying to cut back the overhanging branches, but that these steps were ineffectual because of the continuing expansion of the root system and branches. Fancher prayed for an injunction compelling Fagella to remove the tree and its invading root system entirely, and an award of damages to cover the cost of restoring the property to its former condition.

The circuit court heard the evidence ore tenus. At the hearing, Fancher testified that the tree's trunk was on Fagella's property, about "two to three feet from the party/common wall." Fancher estimated the tree was about 60 feet high at the present time and two feet in trunk diameter at its base.

Fancher presented the testimony of an arborist who qualified as an expert witness and testified that the sweet gum is native to the area, that it grows to "incredible heights of 120 to 140 feet" at maturity and would eventually reach a trunk diameter of 4 to 6 feet.  The arborist testified that the tree was deciduous, dropped "spiky gumballs," had a "heavy pollen load," an "extremely invasive root system" and a "high demand for water."  His opinion was that the tree was presently "only at mid-maturity," that it would continue to grow, and that "[n]o amount of concrete would hold the root system back."  The root system was, in his opinion, the cause of the damage to the retaining wall and the pavers and "in the same line as those cracks to the wall and the foundation." The arborist stated that the tree was "noxious" because of its location and that the only way to stop the continuing damage being done by the root system was to remove the tree entirely, because the roots, if cut, would grow back.

Fancher also presented the expert testimony of two engineers, who opined that the pressure of the tree's expanding root system was the cause of the structural damage to the retaining wall.  At the conclusion of Fancher's case, Fagella moved to strike the prayer for injunctive relief.  The court, relying on our decision in Smith v. Holt, granted the motion to strike and entered an order denying injunctive

3

relief, retaining for further adjudication Fancher's claim for damages.  We awarded Fancher an interlocutory appeal.

## Analysis

### A. Right of action

The issues raised by vegetation encroaching across property lines have frequently confronted courts throughout the country, leading to results that are less than harmonious. The earlier decisions, including our own, were decided in times when the population was far less densely concentrated than at present, and more often engaged in agriculture.  More recent cases have been concerned with problems arising in more urban settings.  A thorough review and analysis of those cases was recently made by the Supreme Court of Tennessee in Lane v. W.J. Curry & Sons, 92 S.W.3d 355, 360-63 (Tenn. 2002), and it would serve no purpose to repeat that discussion here.

Suffice it to say that, as the Tennessee court explained in Lane, several rules have evolved.  (1) The "Massachusetts Rule," holds that a landowner's right to protect his property from the encroaching boughs and roots of a neighbor's tree is limited to self-help, i.e., cutting off the branches and roots at the point they invade his property.  That rule was based on Michalson v. Nutting, 175 N.E. 490 (Mass. 1931), where the court observed that "the common law has recognized that it is wiser to leave the individual to protect himself, if harm

4

results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious." Id. at 491. (2) The "Virginia Rule," holds that the intrusion of roots and branches from a neighbor's plantings which were "not noxious in [their] nature" and had caused no "sensible injury" were not actionable at law, the plaintiff being limited to his right of self-help. That rule was based on our holding in Smith v. Holt, 174 Va. 213, 5 S.E.2d 492 (1939), where we also said, "when it appears that a sensible injury has been inflicted by the protrusion of roots from a noxious tree or plant onto the land of another, he has, after notice, a right of action at law for the trespass committed." Id. at 219, 5 S.E.2d at 495. We affirmed the trial court's order sustaining a demurrer in that case, holding that neither equitable relief nor damages were warranted because the invading roots came from a privet hedge that was not "noxious" in nature and had caused no "sensible injury." Id. at 220, 5 S.E.2d at 495. (3) The "Restatement Rule," based on Restatement (Second) of Torts §§ 839, 840 (1979), imposes an obligation on a landowner to control vegetation that encroaches upon adjoining land if the vegetation is "artificial," i.e., planted or maintained by a

5

person, but not if the encroaching vegetation is "natural."

(4) The "Hawaii Rule," holds that living trees and plants are ordinarily not nuisances, but can become so when they cause actual harm or pose an imminent danger of actual harm to adjoining property.  That rule is based upon Whitesell v. Houlton, 632 P.2d 1077 (Haw. Ct. App. 1981), where the court said:  "[W]hen overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, [substantial] harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit, the damaged or imminently endangered neighbor may require the owner of the tree to pay for the damages and to cut back the endangering branches or roots and, if such is not done within a reasonable time, the . . . neighbor may cause the cut-back to be done at the tree owner's expense."  Id. at 1079.  The Tennessee court, in Lane, after considering the merits and weaknesses of the foregoing rules, decided to adopt the Hawaii approach, partially overruling an earlier Tennessee decision that had generally adhered to the "Massachusetts Rule."  Lane, 92 S.W.3d at 363-64.

The "Massachusetts Rule" has been criticized on the ground that it is unsuited to modern urban and suburban life, although it may still be suited to many rural conditions.  The "Restatement Rule" has been criticized on the grounds that it

6

is often impossible to determine whether a plant has originated naturally or has been introduced or nurtured by human activity; further, that rule illogically imposes liability on a landowner who carefully maintains his property and spares one who neglects his land and permits his vegetation to "run wild."

Our "Virginia Rule" is subject to the just criticism that the classification of a plant as "noxious" depends upon the viewpoint of the beholder. "Noxious" has been defined as "Hurtful; offensive; offensive to the smell. The word 'noxious' includes the complex idea both of insalubrity and offensiveness. That which causes or tends to cause injury, especially to health or morals." Black's Law Dictionary 1065 (6th ed. 1990). Many would agree that poison ivy meets that definition because of its proclivity to cause personal injury. Some would include kudzu because of its tendency toward rampant growth, smothering other vegetation. Few would include healthy shade trees, although they may cause more damage, and be more expensive to remove, than the others. We conclude that continued reliance on the distinction between plants that are "noxious," and those that are not, imposes an unworkable standard for determining the rights of neighboring landowners.

Accordingly, we now overrule Smith v. Holt, insofar as it conditions a right of action upon the "noxious" nature of a plant that sends forth invading roots or branches into a neighbor's property. We find the reasoning of the Tennessee court in Lane persuasive, and adopt the Hawaii approach as expressed in that case:

> Accordingly, we hold that encroaching trees and plants are not nuisances merely because they cast shade, drop leaves, flowers, or fruit, or just because they happen to encroach upon adjoining property either above or below the ground. However, encroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property. If so, the owner of the tree or plant may be held responsible for harm caused to [adjoining property], and may also be required to cut back the encroaching branches or roots, assuming the encroaching vegetation constitutes a nuisance. We do not, however, alter existing . . . law that the adjoining landowner may, at his own expense, cut away the encroaching vegetation to the property line whether or not the encroaching vegetation constitutes a nuisance or is otherwise causing harm or possible harm to the adjoining property. Thus, the law of self-help remains intact . . . .

Lane, 92 S.W.3d at 364. We also overrule Smith v. Holt insofar as its language may be read to imply that equitable relief is precluded even when a nuisance is found to exist.

### B. Remedy

In a proper application of stare decisis, the circuit court followed Smith v. Holt in denying injunctive relief in the present case. Because of the rule we now adopt, it

8

becomes necessary to consider the appropriate remedy.  The facts pleaded, if proved by Fancher, would constitute a continuing trespass, resulting in actual harm to his property. Under traditional equitable principles, a chancellor may enjoin a continuing trespass, even when each increment of trespass is trivial or the damage is trifling, in order to avoid a multiplicity of actions at law.  Seventeen, Inc. v. Pilot Life Ins. Co., 215 Va. 74, 78, 205 S.E.2d 648, 653 (1974).  Thus, on remand, the circuit court may properly consider injunctive relief in the present case.

Not every case of nuisance or continuing trespass, however, may be enjoined.  The decision whether to grant an injunction always rests in the sound discretion of the chancellor, and depends on the relative benefit an injunction would confer upon the plaintiff in contrast to the injury it would impose on the defendant.  Any burden imposed on the public should also be weighed.  Akers v. Mathieson Alkali Works, 151 Va. 1, 8-9, 144 S.E. 492, 494 (1928).

In weighing the equities in a case of this kind, the chancellor must necessarily first consider whether the conditions existing on the adjoining lands are such that it is reasonable to impose a duty on the owner of a tree to protect a neighbor's land from damage caused by its intruding branches and roots.  In the absence of such a duty, the traditional

9

right of self-help is an adequate remedy.  It would be clearly unreasonable to impose such a duty upon the owner of historically forested or agricultural land, but entirely appropriate to do so in the case of parties, like those in the present case, who dwell on adjoining residential lots.[1]

Further, if such a duty is found to exist on the part of the tree owner, the chancellor must determine the extent of the remedy.  Under the circumstances of the case, will self-help by cutting off the invading roots and branches, followed by an award of damages to compensate the plaintiff for his expenses, afford an adequate and permanent remedy, obviating the need for an injunction?[2]  If not, will complete removal of the defendant's tree be the appropriate remedy when the equities are balanced?  An affirmative answer to the latter question will necessitate a mandatory injunction.  As in all cases in which equitable relief is sought, the chancellor's decision must necessarily depend on the particular facts shown by the evidence, guided by traditional equitable principles.

---

[1] The duty of the owner of a large tract of rural land, whose neighbor creates an adjoining subdivision of small residential lots, presents a question not now before us.  We leave that decision to another day.

[2] In such a case, the chancellor may consider any evidence bearing on the question whether cutting invading roots back to the property line will cause the tree to become so unstable or diseased as to constitute an imminent danger to the properties of either of the parties, or others.

## Conclusion

Because the circuit court, following our decision in Smith v. Holt, did not consider equitable relief to be available, we will reverse the order appealed from and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.