2012 ND 226

**Richard HERRING of Herring Chiropractic Clinic, Plaintiff and Appellant**

v.

**LISBON PARTNERS CREDIT FUND, LTD. PARTNERSHIP and Five Star Services, Defendants and Appellees.**

No. 20120090.

Supreme Court of North Dakota.

Oct. 23, 2012.

Charlotte L. Selland, Lisbon, N.D., for plaintiff and appellant.

Troy A. Wolf, Moorhead, MN, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1]   Richard Herring appealed from a district court summary judgment dismissing his action against Lisbon Partners Credit Fund, Ltd. Partnership ("Lisbon Partners") and Five Star Services ("Five Star") for nuisance, negligence, and civil trespass.   We reverse and remand, concluding the district court erred in finding Lisbon Partners and Five Star owed no duty to Herring to prevent damage caused by encroachment of branches from their tree onto Herring's neighboring property.

I

[¶ 2]   Herring owns a commercial building in Lisbon housing his chiropractic practice.   The adjoining property, including an apartment building, is owned by Lisbon Partners and managed by Five Star.

[¶ 3]   Branches from a large tree located on Lisbon Partners' property overhang onto Herring's property and brush against his building.   For many years Herring trimmed back the branches and cleaned out the leaves, twigs, and debris that would fall from the encroaching branches and clog his downspouts and ·gutters.   Herring claims that the encroaching branches caused water and ice dams to build up on his roof, and eventually caused water damage to the roof, walls, and fascia of his building.   Herring contends that, after he had the damages repaired, he requested compensation from Lisbon Partners and Five Star but they denied responsibility for the damages.

[¶ 4]   Herring sued Lisbon Partners and Five Star for the cost of the repairs to his building, alleging Lisbon Partners and Five Star had committed civil trespass and negligence and had maintained a nuisance by breaching their duty to maintain and trim the tree so that it did not cause damage to his property.   The district court granted Lisbon Partners and Five Star's motion for summary judgment dismissing Herring's claims, concluding Lisbon Partners and Five Star had no duty to trim or maintain the tree and Herring's remedy was limited to self-help: He could trim the branches back to the property line at his own expense.

## II

[¶ 5] Before we consider the merits of an appeal, we must determine whether we have jurisdiction. *Holbach v. City of Minot*, 2012 ND 117, ¶ 5, 817 N.W.2d 340; *In re Estate of Hollingsworth*, 2012 ND 16, ¶ 7, 809 N.W.2d 328. The right to appeal in this state is purely statutory, and if there is no statutory basis for an appeal we must take notice of the lack of jurisdiction and dismiss the appeal. *Holbach*, at ¶ 5; *Estate of Hollingsworth*, at ¶ 7; *City of Grand Forks v. Riemers*, 2008 ND 153, ¶ 5, 755 N.W.2d 99. Only judgments and decrees which constitute a final judgment of the rights of the parties and certain orders enumerated by statute are appealable. *City of Mandan v. Strata Corp.*, 2012 ND 173, ¶ 5, 819 N.W.2d 557; *Brummund v. Brummund*, 2008 ND 224, ¶ 5, 758 N.W.2d 735.

[¶ 6] Herring has attempted to appeal from the order granting summary judgment. An order granting summary judgment is not appealable. *E.g., Hale v. Ward Cnty.*, 2012 ND 144, ¶ 11, 818 N.W.2d 697. An attempted appeal from an order granting summary judgment will, however, be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Id.* A consistent judgment was entered in this case, and we treat the appeal as an appeal from the judgment.

## III

[¶ 7] We have outlined the standards governing our review of a summary judgment entered under N.D.R.Civ.P. 56:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Lynch v. New Pub. Sch. Dist. No. 8*, 2012 ND 88, ¶ 7, 816 N.W.2d 53 (quoting *Richard v. Washburn Pub. Sch.*, 2011 ND 240, ¶ 9, 809 N.W.2d 288). Interpretation of a statute is a question of law, which is fully reviewable on appeal. *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 10, 816 N.W.2d 31.

## IV

[¶ 8] This case presents a question of first impression in this state regarding a landowner's duty to maintain and trim trees on his land which encroach upon and cause damage upon adjoining property. Although this Court has not previously had an opportunity to address this issue, there is a well-developed body of law in other jurisdictions, with courts generally split among four different approaches to the problem.

[¶ 9] Under the "Massachusetts rule," first announced in *Michalson v. Nutting*, 275 Mass. 232, 175 N.E. 490 (1931), a landowner has no liability to neighboring landowners for damages caused by en-

croachment of branches or roots from his trees, and the neighboring landowner's sole remedy is self-help: The injured neighbor may cut the intruding branches or roots back to the property line at his own expense. *See, e.g., id.* at 490–91; *Lane v. W.J. Curry & Sons,* 92 S.W.3d 355, 360–61 (Tenn.2002); *Fancher v. Fagella,* 274 Va. 549, 650 S.E.2d 519, 521 (2007). The basis for the Massachusetts rule was explained in *Michalson,* at 491:

> The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious.

[¶ 10] Another approach is the "Hawaii rule," formulated in *Whitesell v. Houlton,* 2 Haw.App. 365, 632 P.2d 1077 (1981). The court in *Whitesell* noted that the Massachusetts rule, though "simple and certain," was not always "realistic and fair," and therefore held that the owner of a tree may be held liable when encroaching branches or roots cause harm, or create imminent danger of causing harm, beyond merely casting shade or dropping leaves, flowers, or fruit:

> We hold that non-noxious plants ordinarily are not nuisances; that overhanging branches which merely cast shade or drop leaves, flowers, or fruit are not nuisances; that roots which interfere only with other plant life are not nuisances; that overhanging branches or protruding roots constitute a nuisance only when they actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or

fruit; that when overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit, the damaged or imminently endangered neighbor may require the owner of the tree to pay for the damages and to cut back the endangering branches or roots and, if such is not done within a reasonable time, the damaged or imminently endangered neighbor may cause the cutback to be done at the tree owner's expense.

> However, we also hold that a landowner may always, at his own expense, cut away only to his property line above or below the surface of the ground any part of the adjoining owner's trees or other plant life.

*Id.* at 1079.

[¶ 11] The "Restatement rule," based upon the Restatement (Second) of Torts §§ 839–840 (1979), distinguishes between natural and artificial conditions on the land. Under the Restatement rule, if the tree was planted or artificially maintained it may be considered a nuisance and its owner may be liable for resulting damages, but there is no liability for a naturally growing tree that encroaches upon neighboring property. *See Lane,* 92 S.W.3d at 361–62; *Fancher,* 650 S.E.2d at 521.

[¶ 12] The "Virginia rule," adopted in *Smith v. Holt,* 174 Va. 213, 5 S.E.2d 492 (1939), makes a distinction between noxious and non-noxious trees. Under the Virginia rule, a tree encroaching upon neighboring property will be considered a nuisance, and an action for damages available, if it is a "noxious" tree and has inflicted a "sensible injury." *Id.* at 495; *see also Fancher,* 650 S.E.2d at 521. If the tree is "not noxious in its nature" and "no 'sensible injury' has been inflicted,"

however, the neighboring landowner's remedy is limited to self-help. *Smith*, at 495; *see also Fancher*, at 521.

[¶ 13] Although the four rules create varying degrees of liability for the owner of an encroaching tree, they do have one common characteristic: Each of the four rules recognizes the right of the neighboring landowner to engage in self-help. *See Lane*, 92 S.W.3d at 360. Thus, no matter which rule is adopted, the neighboring landowner retains the right to cut back the intruding branches or roots to the property line at his own expense.

[¶ 14] The district court in this case considered application of the Massachusetts, Restatement, and Hawaii rules, and determined that the Massachusetts rule provided the most practical and understandable rule and was most consistent with North Dakota law. In particular, the district court concluded that application of the Hawaii rule would conflict with N.D.C.C. §§ 47–01–12 and 47–01–17, which provide:

> *47–01–12. Scope of ownership— Above and below surface.* The owner of land in fee has the right to the surface and to everything permanently situated beneath or above it.

> *47–01–17. Tree occupying lands of adjacent owner—Ownership determined from trunk.* Trees whose trunks stand wholly upon the land of one owner belong exclusively to that owner although their roots grow into the land of another. Trees whose trunks stand partly on the land of two or more coterminous owners belong to them in common.

The district court concluded that under N.D.C.C. § 47–01–12, Herring had a "right" to the overhanging branches and underlying roots of the tree, and therefore this portion of the tree was "just as much the responsibility of the adjacent landowner as it is the owner of the trunk." In

effect, the district court concluded that Herring had the "right" to the branches above his property and therefore had the responsibility to maintain them.

[¶ 15] In an apparent attempt to harmonize the two statutory provisions, the district court essentially nullified N.D.C.C. § 47–01–17. That statute expressly provides that when the trunk of the tree is wholly upon the land of one owner, the tree "belong[s] exclusively to that owner," yet the district court held that Herring in effect owned the branches above his property and had the responsibility to maintain them. Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. *E.g., Brewer v. Ziegler*, 2007 ND 207, ¶ 10, 743 N.W.2d 391. The interpretation adopted by the district court does not give meaning and effect to that portion of N.D.C.C. § 47–01–17 which provides that the owner of the tree's trunk "exclusively" owns the entire tree. Rather, the district court has effectively read that language out of the statute by declaring that the adjoining landowner has the "right to [encroaching] branches or roots" and that "the portion [of the tree] overhanging or penetrating under adjacent property, is just as much the responsibility of the adjacent landowner as it is the owner of the trunk."

[¶ 16] Under the circumstances here, the appropriate rule of statutory construction is provided in N.D.C.C. § 1–02–07:

> Whenever a general provision in a statute is in conflict with a special provision in the same or in another statute, the two must be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision must prevail and must be con-

strued as an exception to the general provision, unless the general provision is enacted later and it is the manifest legislative intent that such general provision shall prevail.

Section 47–01–12, N.D.C.C., is a broad, general provision stating that the owner of land has the right to everything permanently situated above it or beneath it. Section 47–01–17, N.D.C.C., however, specifically governs ownership of trees, and provides that the owner of the land holding the trunk of the tree "exclusively" owns the entire tree. If there is an irreconcilable conflict between the two statutes, N.D.C.C. § 47–01–17, the particular provision, would take precedence over N.D.C.C. § 47–01–12, the general provision.

[¶ 17] Contrary to the district court's conclusion that the Massachusetts rule is more consistent with North Dakota statutory law, we conclude that the Hawaii rule more fully gives effect to both statutory provisions. The Hawaii rule is expressly based upon the concept, embodied in N.D.C.C. § 47–01–17, that the owner of the trunk of a tree which is encroaching on neighboring property owns the entire tree, including the intruding branches and roots:

> Because the owner of the tree's trunk is the owner of the tree, we think he bears some responsibility for the rest of the tree.... [W]e think he is duty bound to take action to remove the danger before damage or further damage occurs.

*Whitesell,* 632 P.2d at 1079; *see also Lane,* 92 S.W.3d at 363. Our law recognizes a property owner's general duty to ensure that his property does not injure others or their property. *See* N.D.C.C. § 9–10–01 ("Every person is bound without contract to abstain from injuring the person or property of another"); N.D.C.C. § 9–10–06 ("A person is responsible not only for the result of the person's willful acts but

also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or self"); N.D.C.C. § 42–01–01(4) ("a nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission ... [i]n any way renders other persons insecure in life or in the use of property"). In addition, the Hawaii rule also protects the adjoining landowner's right embodied in N.D.C.C. § 47–01–12 to control the surface of his land and everything beneath or above it by retaining his separate right to enlist self-help by cutting intruding branches and roots back to the property line. The Hawaii rule recognizes and gives effect to the principles embodied in both N.D.C.C. §§ 47–01–12 and 47–01–17, recognizing the tree owner's ownership and responsibility for the entire tree while also protecting the neighboring landowner's right to everything above and below the surface of his land.

[¶ 18] Beyond the Hawaii rule's closer compatibility with North Dakota statutory law, we also conclude that the Hawaii rule is the most well-reasoned, fair, and practical of the four generally recognized rules. We first note that the Restatement and Virginia rules have each been adopted in very few jurisdictions, and have been widely criticized as being based upon arbitrary distinctions which are unworkable, vague, and difficult to apply. *See, e.g., Melnick v. C.S.X. Corp.,* 312 Md. 511, 540 A.2d 1133, 1136–38 (1988); *Lane,* 92 S.W.3d at 361–62. In fact, the Supreme Court of Virginia has overruled *Smith* and abandoned the Virginia rule in favor of the Hawaii rule. *Fancher,* 650 S.E.2d at 522.

[¶ 19] The Massachusetts rule has also been widely criticized as being "unsuited to modern urban and suburban life." *Fancher,* 650 S.E.2d at 522. As the court summarized in *Lane,* 92 S.W.3d at 361 (citations and footnote omitted):

The Massachusetts rule, however, has been criticized as being outdated, having evolved in an earlier time when land was mostly unsettled and people lived predominately in rural settings. The Massachusetts rule has also been criticized as fostering a "law of the jungle" mentality because self-help effectively replaces the law of orderly judicial process as the only way to adjust the rights and responsibilities of disputing neighbors. As one court has observed, "in the long run neighborhood quarrels and petty litigation will be minimized rather than magnified by a rule that does not require an exercise of self-help before permitting an action to enforce legal rights." *Ludwig v. Creswald, Inc.*, 7 Pa. D. & C.2d 461, 464 (1956). Finally, some courts have questioned whether the Massachusetts rule is fair given that it deprives deserving plaintiffs of any meaningful redress when their property is damaged. A strict application of the Massachusetts rule to the present case, for example, would leave the plaintiff with no remedy for the hole in her roof or for being unable to use the only bathroom in her house for two years.

[¶ 20] We add our concern that the Massachusetts rule and its limited remedy provide little aid to a neighboring landowner who has suffered significant damage from intruding branches or roots. While self-help may be sufficient when a few branches have crossed the property line and can be easily pruned by the neighboring landowner himself, it is a woefully inadequate remedy when overhanging branches break windows, damage siding, or knock holes in a roof, or when invading roots clog sewer systems, damage retaining walls, or crumble a home's foundation. Even the mere expense of having large trees trimmed by a professional, as was required in this case, is a significant burden to place on the innocent neighboring landowner when his neighbor's trees are allowed to encroach upon his property unabated.

[¶ 21] While we recognize a landowner's right to generally use his property as he sees fit, including planting and maintaining trees and vegetation, we agree with those courts which have held that right comes with a corresponding duty to maintain those trees and vegetation in a manner which does not unreasonably interfere with the rights of adjoining landowners. We agree with the rationale of the court in *Abbinett v. Fox*, 103 N.M. 80, 703 P.2d 177, 181 (N.M.Ct.App.1985) (citations omitted):

We adopt the rule stated in *Whitesell v. Houlton*. This approach voices a rational and fair solution, permitting a landowner to grow and nurture trees and other plants on his land, balanced against the correlative duty of a landowner to ensure that the use of his property does not materially harm his neighbor. The privilege of a landowner to make use of his property as he sees fit is generally qualified by the requirement that he exercise due regard for the interests of those who may be affected by the landowner's activities on the property. It is the duty of a landowner to utilize his property in a reasonable manner so as not to cause injury to adjoining property.

Although a landowner is entitled to use his own property, consistent with the law, in a manner calculated to maximize his own enjoyment, a concomitant of this right is that the use and enjoyment of his estate may not unreasonably interfere with or disturb the rights of adjoining landholders, or create a private nuisance.

[¶ 22] We also agree with the comprehensive and well-reasoned rationale ex-

pressed by the Supreme Court of Tennessee when it adopted the Hawaii rule:

> After carefully considering the various approaches of other jurisdictions and our own decision in *Granberry* [*v. Jones,* 188 Tenn. 51, 216 S.W.2d 721 (Tenn. 1949)], we have decided to join the growing number of states that have adopted the Hawaii approach. We do so for several reasons. First, the Hawaii approach strikes an appropriate balance between the competing rights of adjacent property owners. As stated by one court, "[t]his approach voices a rational and fair solution, permitting a landowner to grow and nurture trees and other plants on his land, balanced against the correlative duty of a landowner to ensure that the use of his property does not materially harm his neighbor." *Abbinett,* 703 P.2d at 181. We agree that since the "owner of the tree's trunk is the owner of the tree, he [should] bear some responsibility for the rest of the tree." *Whitesell,* 632 P.2d at 1079. Second, we are persuaded that the Hawaii approach is stringent enough to discourage trivial suits, but not so restrictive that it precludes a recovery where one is warranted. Although some courts express the concern of spawning numerous lawsuits, we note that states which do not limit a plaintiff's remedy to self-help have apparently not suffered any such flood of litigation. Imposing a requirement of actual harm or imminent danger of actual harm to the adjoining property is a sufficient and appropriate gatekeeping mechanism. Third, we agree with the notion that limiting a plaintiff's remedy to self-help encourages a "law of the jungle" mentality because self-help replaces the law of orderly judicial process as the exclusive way to adjust the rights and responsibilities of disputing neighbors. It seems that more harm than good can come from a rule that encour-

ages angry neighbors to take matters into their own hands. Fourth, the Hawaii rule does not depend upon difficult to apply or unworkable distinctions, a major disadvantage of the Restatement and Virginia approaches. We do not wish to place our courts in the difficult, and sometimes impossible, position of having to ascertain the origin of a particular tree or other vegetation. Nor should landowners who allow their property to run wild be shielded from liability while those who maintain and improve their land be subject to liability. The law should not sanction such an anomaly. Fifth, the Hawaii approach is consistent with the principle of self-help embraced in *Granberry.* The rule is also consistent with *Granberry* 's recognition that a landowner may recover the "expense to which he may be put now or hereafter in cutting the overhanging branches or foliage," assuming the encroaching vegetation constitutes a nuisance. *Granberry,* 216 S.W.2d at 723. Finally, the rule we adopt today is in keeping with the aim of the law to provide a remedy to those who are harmed as a result of another's tortious conduct.

*Lane,* 92 S.W.3d at 363–64.

[¶ 23] We therefore adopt the Hawaii rule as expressed in *Lane:*

> Accordingly, we hold that encroaching trees and plants are not nuisances merely because they cast shade, drop leaves, flowers, or fruit, or just because they happen to encroach upon adjoining property either above or below the ground. However, encroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property. If so, the owner of the tree or plant may be held responsible for harm caused by it, and may also be required to cut back the encroaching branches or

roots, assuming the encroaching vegetation constitutes a nuisance. We do not, however, alter existing Tennessee law that the adjoining landowner may, at his own expense, cut away the encroaching vegetation to the property line whether or not the encroaching vegetation constitutes a nuisance or is otherwise causing harm or possible harm to the adjoining property.

*Id.* at 364.

[¶ 24] Although today we provide a framework for resolution of disputes arising from encroaching trees which authorizes judicial and self-help remedies, we stress that it is preferable for the parties to cooperate and agree on an amicable resolution to such disputes. In this regard, we recognize an additional, practical reason for creating a duty on the tree's owner to properly maintain the tree and involving him in the process of pruning the encroaching branches, rather than limiting the available remedy solely to self-help. If only self-help is available, the offending branches may be cut back to the property line, but the neighbor may not enter the tree owner's property and cut back further. However, it will often be less aesthetically pleasing, as well as potentially harmful to the health of the tree, to merely hack the branches off randomly at the property line, rather than properly pruning them back to the trunk or a main branch or leader. We therefore strongly encourage neighbors to make every attempt to settle these disputes amicably and in a conciliatory manner, giving the tree's owner an opportunity to prune the offending growth before resorting to drastic self-help measures.

[¶ 25] Having adopted the Hawaii rule, we turn to its application in this case. The district court applied the Massachusetts rule, holding that Lisbon Partners and Five Star had no duty to trim or maintain the trees and that Herring's only available remedy was self-help. The court thus did not address the specific factual allegations regarding the damage to Herring's property.

[¶ 26] Under the rule we adopt today, Lisbon Partners and Five Star, as the owners of the encroaching tree, are not liable for any damages caused merely by the tree dropping leaves, flowers, or fruit. However, Herring has also alleged damages caused by branches from the offending tree physically scraping against the building. If Herring can present evidence establishing damages caused by the intruding branches physically contacting the building, Lisbon Partners and Five Star would be liable for such damages under the Hawaii rule. Accordingly, we reverse the summary judgment dismissing Herring's action and remand for further proceedings to determine if there is a genuine issue of material fact precluding summary judgment.

V

[¶ 27] We reverse the summary judgment dismissing Herring's action and remand for further proceedings.

[¶ 28] CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 29] I respectfully dissent because I believe the majority unnecessarily adopts public policy on liability for errant trees.

[¶ 30] The majority weighs policy options to select what this Court deems the more appropriate rule of law for our state. But that normally is a legislative function. *See McAllister v. McAllister,* 2010 ND 40, ¶ 35, 779 N.W.2d 652 (Crothers, J., specially concurring) (noting the legislature is the policy setting branch of government with

procedures allowing it to do studies, gather evidence, hold hearings, and come to a decision after public input and debate) (citations omitted). Of course, not all court determination of public policy is improper. Occasionally the judiciary is required to ascertain or predict policy to decide a pending case to fill a gap left by the legislature or to fully develop a rule of law. *See Downtowner, Inc. v. Acrometal Products, Inc.*, 347 N.W.2d 118, 124 (N.D.1984). However, that is not the present situation. Here, Herring's claims would be barred under any of the four rules of law considered by the majority. Therefore, summary judgment properly was granted because defendants have no liability under any of the policy choices considered by the Court.

[¶ 31] The Massachusetts rule imposes no landowner liability for encroaching branches or roots. Majority opinion at ¶ 9. The Hawaii rule selected by the Court bars tree owner liability for "dropping leaves, flowers, or fruit." Majority opinion at ¶ 10. The Restatement rule imposes liability for planted but not for naturally growing trees. Majority opinion at ¶ 11. The Virginia rule would impose liability for maintenance of a noxious tree causing sensible injury. Majority opinion at ¶ 12. All four of the liability rules permit adjacent landowners to exercise self-help to protect their property. Majority opinion at ¶ 13.

[¶ 32] Herring claims water backup and infiltration resulting from leaves and twigs accumulating on his roof and plugging downspouts and gutters caused damages to his building roof and walls. Majority opinion at ¶ 3. The defendants moved for summary judgment, thereby putting Herring to his proof. Our rule is well settled that "[t]he party resisting a motion for summary judgment must present competent admissible evidence which raises an issue of material fact." *Klimple v. Bahl,*

2007 ND 13, ¶ 4, 727 N.W.2d 256. Yet, at summary judgment, Herring presented no competent, admissible evidence on the age or history of the offending tree, whether his building preceded the tree's existence, whether the tree was planted or grew naturally or whether the tree is "noxious." Herring thus failed to establish a triable issue of fact on defendant's liability under any of the legal theories contemplated by the Court.

[¶ 33] Herring's complaint also alleged damage to the building from physical contact by tree branches. *See* Majority opinion at ¶ 3. Herring had an obligation on summary judgment to present evidence of defendants' liability and Herring's damages. *Klimple,* 2007 ND 13, ¶ 4, 727 N.W.2d 256. Herring's affidavit opposing summary judgment mentions branches scraping against the roof and side of the building, pushing "rock and asphalt pieces off the roof." But again, the record is devoid of evidence regarding compensable damage from contact by the tree. Rather, Herring only produced evidence supporting his contention that damage to his roof, walls and fascia was due to ice dams and overflow of blocked gutters and downspouts. Majority opinion at ¶ 3. Herring therefore failed as a matter of law to show building damage from branches contacting the building, and this Court proceeding to announce a legal theory of recovery is unnecessary.

[¶ 34] Finally, Herring claims entitlement to relief because of defendants' negligence, maintenance of a nuisance and civil trespass. Majority opinion at ¶ 1. For those claims, Herring's fault must be compared to defendants' fault. *See* N.D.C.C. §§ 32–03.2–01 and 32–03.2–02. Regarding Herring's claim of building damage by physical contact by tree branches, the duty to avoid damages, the opportunity for self-help and the evidence showing Herring

previously exercised self-help to trim the tree likely would bar Herring's recovery as a matter of law. On this basis as well, the Court's decision is unnecessary and summary judgment should be affirmed.

[¶ 35]   DALE V. SANDSTROM, J., concurs.