MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2023 ME 59
Docket:        Cum-22-394
Argued:        July 6, 2023
Decided:       August 29, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

ALAN R. ATKINS et al.

v.

MARIE F. ADAMS et al.

CONNORS, J.

[¶1]  Alan R. Atkins and Gail P. Atkins appeal from a summary judgment entered by the Superior Court (Cumberland County, *McKeon, J.*) in favor of Marie F. Adams and Peter T. Adams.  The Atkinses argue that the court erred in declaring that "the Adamses have a right to trim, cut or remove branches or limbs" of the Atkinses' oak tree that encroach onto the Adamses' property because the court failed to impose a duty upon the Adamses to exercise reasonable care.  We affirm, holding that, under the common law, property owners have the right to cut any part of a non-boundary tree that encroaches onto their property, regardless of how their actions affect the tree.

## I. BACKGROUND

[¶2]  The following facts are drawn from the summary judgment record and, unless noted otherwise, are not disputed by the parties.  *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 2, 86 A.3d 52.

[¶3]  The Atkinses and the Adamses are abutting property owners in Cape Elizabeth.  At issue is an eighty-foot, 100-year-old red oak tree that is located near the boundary separating the two properties.  The trunk of the oak tree is located on the Atkinses' property, but its "leader,"[1] branches, and limbs extend over the boundary and onto the Adamses' property.

[¶4]  In September 2020, Mrs. Adams noticed that an employee of a tree service company was trimming trees on a neighbor's property across the street. She asked the employee for a consultation regarding the removal of several trees located in the Adamses' yard.  Mrs. Adams and the employee also discussed the oak tree's branches and whether they posed a risk to people or property.

[¶5]  The Atkinses were inside their home during Mrs. Adams's conversation with the employee.  At some point, Mr. Atkins exited his home and

---

[1]  A leader is a portion of a tree that serves as its main branch.  *See Leader*, New Oxford American Dictionary (3d ed. 2010); *Leader*, American Heritage Dictionary of the English Language (5th ed. 2016).

conversed with Mrs. Adams and the employee, apparently hoping to dissuade them from taking any action regarding the oak tree.[2]  Over the next few days, Mr. Atkins sent letters to the Adamses about the oak tree.  Mr. Atkins and Mr. Adams also had a conversation about the Adamses' intent with respect to the oak tree.  Specifically, Mr. Adams told Mr. Atkins that they were not going to touch it.

[¶6]  Later that month, Mr. Atkins filed a complaint in the Superior Court asserting common law trespass (Count 1) and requesting a permanent injunction (Count 2).  Accompanying his complaint was a motion for a temporary restraining order to enjoin the Adamses from entering the Atkinses' property and from "touching, damaging, removing, severing, or cutting down" any portion of the oak tree.  The court (*MG Kennedy, J.*) granted the motion.  Shortly thereafter, Mr. Atkins filed an amended complaint adding a request for a declaratory judgment (Count 3), i.e., seeking a declaration that the Adamses have "no right to touch, damage, remove, sever, or cut down any part or portion of the Oak Tree."  On October 26, 2020, the Adamses answered and filed a counterclaim against the Atkinses, requesting a declaratory judgment stating

---

[2]  The parties dispute what was said during this interaction.

4

the opposite, i.e., that they *do* have the "right to trim, cut, or remove branches, limbs, and trunks" that extend onto their property.[3]

[¶7]  In August 2021, the parties each moved for summary judgment. Specifically, the Atkinses requested summary judgment in their favor on the Adamses' counterclaim.  The Adamses sought summary judgment in their favor on their counterclaim and Counts 1 through 3 of Mr. Atkins's amended complaint.  The Adamses also requested that the temporary restraining order be dissolved.

[¶8]   By written order entered on November 1, 2021, the court (*McKeon, J.*) ruled on both parties' motions.  The court denied the Atkinses' motion for summary judgment as to the Adamses' counterclaim and ruled in favor of the Adamses with respect to their counterclaim and Count 3 of Mr. Atkins's amended complaint, declaring that "the Adamses have a right to trim, cut or remove branches or limbs of the [Oak] Tree that are located on their property."  The court also granted summary judgment in favor of the Adamses on Mr. Atkins's request for injunctive relief because the Adamses had prevailed on the "central issue in this case," i.e., their rights with respect to the oak tree,

---

[3] Originally, the Adamses filed their counterclaim only against Mr. Atkins.  The court (*McKeon, J.*) granted the Adamses' request to amend their complaint to add Mrs. Atkins in June 2021.  Mrs. Atkins is only a counterclaim defendant; she is not a plaintiff.

so Mr. Atkins could not satisfy the elements necessary to obtain a permanent injunction. As such, the court dissolved the temporary restraining order. Finally, the court denied the Adamses' motion for summary judgment as to Mr. Atkins's trespass claim against Mr. Adams but granted as to Mr. Atkins's trespass claim against Mrs. Adams.[4]

[¶9]   A bench trial was held on Mr. Atkins's trespass claim against Mr. Adams on November 22, 2022. The court found in favor of Mr. Adams, after which the Atkinses filed a timely notice of appeal. *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2023).

## II.  DISCUSSION

[¶10]   The Atkinses challenge only the court's entry of summary judgment in favor of the Adamses on both parties' declaratory judgment counts and Mr. Atkins's injunctive relief count.

[¶11]   "We review a ruling on cross-motions for summary judgment de novo, reviewing the trial court's decision for errors of law and considering the evidence in the light most favorable to the party against whom the judgment has been granted in order to determine whether there is a genuine issue of

---

[4]  On November 8, 2021, the Atkinses appealed the court's entry of summary judgment. We dismissed the Atkinses' appeal as interlocutory because of the remaining trespass count against Mr. Adams. *Atkins v. Adams*, Mem-22-62 (July 12, 2022).

material fact." *InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶ 12, 228 A.3d 721 (quotation marks omitted). "Summary judgment is appropriate only when the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 5, 206 A.3d 307 (quotation marks omitted). A material fact is one that could potentially affect the outcome of the suit; a genuine issue of material fact "exists when the evidence requires a fact-finder to choose between competing versions of the truth." *Id.* (quotation marks omitted). Each party has the burden of showing that the elements of their claim are established without dispute as to material fact within the summary judgment record. *Arrow Fin. Servs., LLC v. Guiliani*, 2011 ME 135, ¶ 9, 32 A.3d 1055.

[¶12] The Atkinses contend that the court erred as a matter of law in declaring, without qualification, that the Adamses have a right to trim, cut, or remove branches or limbs of the Atkinses' non-boundary[5] oak tree that are located on the Adamses' property because that declaration fails to recognize a duty of reasonable care that the Atkinses claim the Adamses owe to them. The

---

[5] The common law distinguishes between boundary and non-boundary trees. A boundary tree sits "on the division line between adjoining proprietors, such that the line passes through the trunk or body of the tree above the surface of the soil" and "is the common property of both proprietors as tenants in common." *Alvarez v. Katz*, 124 A.3d 839, 842 (Vt. 2015) (quotation marks omitted). Non-boundary trees, however, are not commonly owned; the owner of a non-boundary tree is determined by where the trunk of the tree stands. *Levine v. Black*, 44 N.E.2d 774, 775 (Mass. 1942); *see Alvarez*, 124 A.3d at 843.

Atkinses further argue that, had the court acknowledged this duty of care, summary judgment was inappropriate because there is a genuine dispute of material fact as to whether it is reasonable for the Adamses to cut the leader of the oak tree when doing so would likely kill it.  The Adamses counter that the court correctly determined that they have an absolute right to trim vegetation that encroaches onto their property, and that the court properly declined to reach the issue of whether the Adamses owe the Atkinses a duty of care because this is not a tort case.[6]

---

[6] The argument that whether the Adamses owe the Atkinses a duty of care with respect to the oak tree cannot be decided in this action because "this is not a tort case" lacks merit.  *See* Horton & McGehee, *Maine Civil Remedies* § 3-1(c) at 33 (4th ed. 2004) (explaining that "the very purpose of the Declaratory Judgments Act is to spare the parties the necessity of doing or suffering wrong before their legal rights can be construed judicially").

Of more substance is whether there is a ripe case or controversy regarding whether the Adamses can cut the leader.  The Atkinses' argument rests on the apparently undisputed fact that cutting the leader would kill the oak tree.  There has been some suggestion that the question of reasonableness is not before us because the record lacks evidence that the Adamses intend to cut the leader.  The record is, in fact, equivocal on this front.  During oral argument, the Adamses' counsel admitted that the Adamses read the declaratory judgment as allowing them to cut the leader and that they want to maintain that right—while at the same time asserting that they have no intent to cut the leader.  Given the Adamses' representation to this Court that they have no intent to cut the leader, we could dispose of this appeal by limiting the declaration to exclude the leader, concluding that there is no genuine controversy.  *See Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶¶ 20-22, 221 A.3d 554.  Given, however, that the Adamses believe that the judgment declares that they have the right to cut *any* part of the tree on their side of the property; that this matter is on its second appeal and rounding into its third year of life; that there is evidence in the record, albeit disputed, that at some point Mrs. Adams did in fact express an intent to cut the leader; and that a change in the Adamses' intent could result in the destruction of the oak tree prior to identifying their legal right to do so; we conclude that there is a ripe controversy, and we address the scope of the Adamses' common law right vis-à-vis the parts of the oak tree that encroach onto their property, whatever the resulting harm to the tree.

**A.    The common law provides that a property owner may remove vegetation encroaching onto the owner's property.**

[¶13]   A property owner's common law right to remove encroaching vegetation is founded on the maxim "*cujus est solum ejus est usque ad coelum et ad inferos* (to whomsoever the soil belongs, he owns also to the sky and to the depths)," *Harding v. Bethesda Reg'l Cancer Treatment Ctr.*, 551 So. 2d 299, 302 (Ala. 1989) (quotation marks omitted), which can be traced back at least as early as the seventeenth century jurist Sir Edward Coke, *see* John G. Sprankling, *Owning the Center of the Earth*, 55 UCLA L. Rev. 979, 984 (2008); *see also Smith v. Grant*, 56 Me. 255, 259 (1868) (recognizing the maxim); Paul G. Creteau, *Maine Real Estate Law* 2 (1969) (same).  "[F]rom 'ancient times' it has been the accepted rule that a landowner has the exclusive right to possess and use all of the landowner's property, including the air space above the ground . . . ." *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 360 (Tenn. 2002).  Although this maxim "may have been qualified insofar as air flight and oil and gas law is concerned[,] . . . it still extends to air space that can be occupied by limbs of trees." *Harding*, 551 So. 2d at 302; *see United States v. Causby*, 328 U.S. 256, 260-62, 264 (1946) ("We have said that the airspace is a public highway.  Yet it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere.  Otherwise buildings

could not be erected, trees could not be planted, and even fences could not be run. The principle is recognized when the law gives a remedy in case overhanging structures are erected on adjoining land.").

[¶14] That the *ad coelum* principle incorporates the right of a property owner to cut encroaching vegetation[7] by way of self-help is also entrenched in the common law.[8]

---

[7] A property owner engaging in self-help may not enter the adjoining property to trim vegetation encroaching onto the owner's property without consent of the owner of the adjoining property. *See* Robert Roy, Annotation, *Encroachment of Trees, Shrubbery, or Other Vegetation Across Boundary Line*, 65 A.L.R. 4th 603 § 16[d] (1988).

[8] *See, e.g.*, *Harding v. Bethesda Reg'l Cancer Treatment Ctr.*, 551 So. 2d 299, 301-02 (Ala. 1989); *Cannon v. Dunn*, 700 P.2d 502, 503-04 (Ariz. Ct. App. 1985); *Bonde v. Bishop*, 245 P.2d 617, 620-21 (Cal. Dist. Ct. App. 1952); *Sterling v. Weinstein*, 75 A.2d 144, 145-48 (D.C. 1950); *Gallo v. Heller*, 512 So. 2d 215, 216 (Fla. Dist. Ct. App. 1987); *Whitesell v. Houlton*, 632 P.2d 1077, 1079 (Haw. Ct. App. 1981); *Toledo, St. L. & K. C. R. Co. v. Loop*, 39 N.E. 306, 307 (Ind. 1894); *Harndon v. Stultz*, 100 N.W. 329, 330 (Iowa 1904); *Pierce v. Casady*, 711 P.2d 766, 767-68 (Kan. Ct. App. 1985); *Commonwealth v. Sexton*, 256 S.W.3d 29, 35 n.13 (Ky. 2008); *Melnick v. C.S.X. Corp.*, 540 A.2d 1133, 1135-38 & n.3 (Md. 1988); *Michalson v. Nutting*, 175 N.E. 490, 490-91 (Mass. 1931); *Holmberg v. Bergin*, 172 N.W.2d 739, 744 (Minn. 1969); *Buckingham v. Elliott*, 62 Miss. 296, 300-01 (1884); *Scannavino v. Walsh*, 136 A.3d 948, 954 (N.J. Super. Ct. App. Div. 2016); *Abbinett v. Fox*, 703 P.2d 177, 181 (N.M. Ct. App. 1985); *Herring v. Lisbon Partners Credit Fund, Ltd. P'ship*, 823 N.W.2d 493, 498, 502 (N.D. 2012); *Rababy v. Metter*, 30 N.E.3d 1018, 1024 (Ohio Ct. App. 2015); *Jones v. Wagner*, 624 A.2d 166, 167-68 (Pa. Super. Ct. 1993); *Rosa v. Oliveira*, 342 A.2d 601, 605 (R.I. 1975); *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364 (Tenn. 2002); *Fancher v. Fagella*, 650 S.E.2d 519, 522 (Va. 2007); *Alvarez*, 124 A.3d at 843-45; *Gostina v. Ryland*, 199 P. 298, 300-01 (Wash. 1921).

As noted by the Tennessee Supreme Court, although jurisdictions "uniformly agree that self-help is an appropriate remedy," beyond that, jurisdictions differ as to whether self-help is the *only* remedy. *Lane*, 92 S.W.3d at 360. Because the parties seek relief only as to the Adamses' ability to engage in self-help, we have no occasion to determine whether the remedy is limited to self-help in Maine.

**B.**     **The view of most courts is that, under the common law, a property owner may remove encroaching non-boundary tree limbs or roots by way of self-help regardless of the effect of the removal on the health of the tree.**

[¶15]  The Atkinses acknowledge the general rule that a property owner has the right to remove encroaching vegetation by way of self-help.  They assert, however, that a duty of care limits this right when the removal of such vegetation would injure the tree.[9]

[¶16]  A few courts have identified such a limitation.  *See, e.g.*, *Booska v. Patel*, 30 Cal. Rptr. 2d 241, 244-45 (Ct. App. 1994); *Fliegman v. Rubin*, 781 N.Y.S. 2d 624, 624 (App. Div. 2003) (unpublished table decision); *Balzer v. Ryan*, 263 So. 3d 189, 191 & n.2 (Fla. Dist. Ct. App. 2018).  As the Court of Appeals of Washington noted, however, these decisions appear to be "outliers." *Mustoe v. Xiaoye Ma*, 371 P.3d 544, 547 (Wash. Ct. App. 2016).  A majority of jurisdictions allow a property owner to remove non-boundary tree branches and roots extending onto their property regardless of any damage that may occur to the tree.  *See, e.g.*, *Alvarez v. Katz*, 124 A.3d 839, 843 (Vt. 2015) ("The right to cut encroaching trees where they enter the land of another, without regard to the impact on the encroaching tree by such cutting, is well-established under

---

[9]  The Atkinses' expert opined that cutting the leader would substantially harm the oak tree and likely kill it.

Vermont law."); *Harding*, 551 So. 2d at 302 ("The owner of property has no duty to refrain from cutting roots of a tree that intrude upon his property."); *Levine v. Black*, 44 N.E.2d 774, 775 (Mass. 1942) ("Where the trunk of a tree stands wholly on the land of one proprietor, he has been deemed the owner of the entire tree, though there is no doubt of the right of the adjoining proprietor to cut off limbs and roots which invade his premises." (citations omitted)); *Mustoe*, 371 P.3d at 547 (agreeing with *Alvarez* that a property owner may cut encroaching trees without regard to the impact on the tree).

**C.      We agree with the majority view that a property owner may remove encroaching non-boundary tree branches or roots even if the removal damages the tree.**

[¶17]  We have not previously addressed the specific question whether a property owner's right to remove encroaching non-boundary tree limbs and roots is limited when such removal will harm the tree.  But nothing in our precedent suggests deviation from the majority view.  To the contrary, an authority on which we have relied, *see e.g.*, *Mabee v. Nordic Aquafarms Inc.*, 2023 ME 15, ¶ 47, 290 A.3d 79; *Lloyd v. Est. of Robbins*, 2010 ME 59, ¶¶ 16-17, 19-20, 997 A.2d 733, notes the following:

> Sometimes trees grow so close to the property line that their branches extend beyond it and over the land of the adjoining owner.  Although such trees belong entirely to the owner of the land on which the trunk stands, the adjoining owner may cut the

12

> overhanging limbs and encroaching roots *without any liability for resulting damage to the tree.*

Creteau, *Maine Real Estate Law* 3 (emphasis added).

[¶18]  The common law may evolve to meet modern circumstances. *See McGarvey v. Whittredge*, 2011 ME 97, ¶ 9, 28 A.3d 620.  For instance, in *Causby*, the Supreme Court opined that the *ad coelum* doctrine "has no place in the modern world," at least as to the part of the sky above the "immediate reaches of the enveloping atmosphere."  328 U.S. at 260-61, 264.  Such reasoning makes sense in the modern world in which, with the technology of flight, the sky has become a public highway.  *See id*. at 264.

[¶19]  But no such technological advances detract from the continuing vitality of the *ad coelum* principle as to the useable portion of property.  As noted above, under the common law, jurisdictions, such as Vermont, authorize a property owner to engage in self-help regardless of the impact that any trimming may have on the health of a tree, *see Alvarez*, 124 A.3d at 843, and the Atkinses have not persuaded us to depart from the common law.

[¶20]  Perhaps most importantly, many of the rights embodied in the Bill of Rights and our Declaration of Rights evolved from the common law. *See Smith v. Alabama*, 124 U.S. 465, 478 (1888) ("The interpretation of the constitution of the United States is necessarily influenced by the fact that its

provisions are framed in the language of the English common law, and are to be read in the light of its history."); Marshall J. Tinkle, *The Maine State Constitution* 61 (2d ed. 2013) (noting that the just compensation requirement in article 1, section 21 of the Maine Constitution finds its roots in the Magna Carta); *Cordova v. City of Albuquerque*, 816 F.3d 645, 665 (10th Cir. 2016) (Gorsuch, J., concurring) ("Neither can it come as a surprise that existing state common law courts will usually supply a sound and sufficient remedy when claims (possibly) of constitutional dimension are at stake: the whole point of the common law as it evolved in England and this country through the centuries was to vindicate the rights thought fundamental to the enjoyment of life, liberty, and property.").

[¶21]  A primary touchstone of property rights, whether under article 1, section 21 of the Maine Constitution or the Fifth Amendment of the U.S. Constitution, remains the protection against physical invasion onto private property.  *See Causby*, 328 U.S. at 262; *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2074 (2021); *Wellman v. Dep't of Hum. Servs.*, 574 A.2d 879, 885 (Me. 1990); Tinkle, *The Maine State Constitution* at 61 ("Any permanent physical occupation of private property, or any interference with the right to

exclude trespassers, constitutes a taking." (citing *Bell v. Town of Wells*, 557 A.2d

168, 177-79 (Me. 1989))).

[¶22]  Encroaching vegetation is a physical invasion onto private

property.  The longstanding constitutional protection of private property from

uncompensated physical invasions reinforces the conclusion that the common

law allows a property owner to remove such physical invasions.  We would

essentially be forcing the Adamses to suffer a continuing physical occupation

were we to limit their right to engage in self-help.

[¶23]  Finally, we agree with the Supreme Court of Vermont with respect

to the need for maintaining a bright line rule in this area of the law.  *See Alvarez*,

124 A.3d at 845 ("We would be hard-pressed to create a workable rule which

would serve to limit encroachments in number, extent, or distance that a

property owner must tolerate from neighboring trees before allowing the

property owner to exercise self-help.").

[¶24]  For all these reasons, the court properly rejected Mr. Atkins's

request for injunctive and declaratory relief, and the Adamses were entitled to

a judgment declaring that they may remove any part of the Atkinses'

non-boundary oak tree that encroaches onto the Adamses' property, regardless of how any trimming impacts the health of the tree.[10]

### III. CONCLUSION

[¶25]  As Lord Chancellor Herschell commented in 1895, "It may be, and probably is, generally a very unneighbourly act to cut down the branches of overhanging trees unless they are really doing some substantial harm to the neighbour." *Lemmon v. Webb* [1895] LXXI LT 647 HL at 648 (Eng.).  Although our opinion defines with finality the parties' legal rights with respect to the oak tree, it is now the parties' prerogative to define their neighborly relations.

The entry is:

Judgment affirmed.

---

[10]  The Legislature can abrogate, modify, or supplement the common law by statute. *See Myshrall v. Key Bank Nat'l Ass'n*, 2002 ME 118, 802 A.2d 419, 422-23.  Maine's timber trespass statute prohibits a person from cutting down, destroying, damaging, or carrying away "any forest product, ornamental or fruit tree, . . . or property of any kind from land not that person's own."  14 M.R.S. § 7552(2)(A) (2023).  Section 7552(3) governs the measurement of damages resulting from a violation.  The Atkinses did not seek relief based on this statute, and we take no position whether relief would be obtainable under the statute or whether the statute applies at all in this context. *See Rubin v. Josephson*, 478 A.2d 665, 671 (Me. 1984) (explaining that "we will not interpret a statute as modifying the common law in the absence of clear and explicit language showing such modification or abrogation was intended").

Andrew W. Sparks, Esq., and William J. Kennedy, Esq. (orally), Drummond & Drummond, LLP, Portland, for appellants Alan R. Atkins and Gail P. Atkins

Daniel P. Keenan, Esq. (orally), Keenan Law, LLC, South Portland, for appellees Marie F. Adams and Peter T. Adams

Cumberland County Superior Court docket number RE-2020-723
FOR CLERK REFERENCE ONLY